Lauren Regan, OSB # 970878
Email: lregan@cldc.org
Marianne Dugan, OSB # 932563
Email: mdugan@cldc.org
CIVIL LIBERTIES DEFENSE CENTER
1711 Willamette Street Ste 301 # 359
Eugene, OR 97402
Telephone: 541-687-9180

    Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
DISTRICT OF OREGON
EUGENE DIVISION

| | |
|---|---|
| CHLOE LONGWORTH and ANNA LARDNER,<br><br>    Plaintiffs,<br><br>    v.<br><br>DONALD J. TRUMP, President of the United States, in his official capacity; KRISTI NOEM, Secretary, U.S. Department of Homeland Security (DHS), in her official capacity; and U.S. DEPARTMENT OF HOMELAND SECURITY,<br><br>    Defendants. | No. 6:cv-25-2268 |

## INTRODUCTION

    1.    Plaintiffs, and others similarly situated, have for months been assembling and exercising their free speech rights outside the Eugene office of the Department of Homeland Security and Immigration and Customs Enforcement (ICE), which is within a one-block federal building located between 6th and 7th Avenues and Pearl and High Streets in Eugene ("Eugene ICE building"). The building is surrounded by City of Eugene-owned public sidewalks, and contains a plaza area, both of which have been consistently used as traditional public fora.

    2.    As discussed in more detail herein, both Plaintiffs protest at the Eugene ICE building every Tuesday, and often multiple days a week; and have been subjected to arrest, detention, citation, and warnings of the same, due to their vocal protests. By fall 2025, nationwide opposition

Page 1 –  COMPLAINT

and protest to ICE kidnappings and actions resulted in regular protests at ICE buildings and detention centers. In response, the Trump regime fast-tracked new rules greatly expanding the prior regulations governing conduct on federal property, as discussed in detail *infra*. Those revisions were originally set to take effect in January 2026, but were expedited and instead took effect on November 5, 2025.

3. Plaintiffs bring this action on behalf of themselves, and others similarly situated, to challenge recently issued unconstitutional federal regulations, and to stop Defendants' pattern and practice of violating First Amendment rights and attempting to chill Plaintiffs and others from protesting outside of the Eugene ICE building.

4. Defendants and their agents have recently begun unlawfully threatening, detaining, arresting, and charging Plaintiffs and others similarly situated, in violation of the U.S. and Oregon constitutions and in retaliation against them for vocally protesting against Defendants' immigration policies and practices.

5. Defendants' conduct is part of an officially-condoned pattern of retaliating against people who protest the Trump administration's cruel immigration policies and practices.

6. Plaintiffs seek declaratory and injunctive relief against Defendants. Defendants must be enjoined from detaining, arresting, and charging Plaintiffs and others similarly situated; and the newly issued regulations must be declared unconstitutional and enjoined.

## PARTIES

7. Plaintiffs reside in Eugene, Oregon, and are local community members and human rights activists who are strongly opposed to the current immigration policies and tactics. They regularly attend protests against ICE and deportations, and stand in solidarity with immigrant community members.

8. Defendant Donald Trump is the current President of the United States since January

20, 2025. He establishes priorities and directs policies of executive agencies through the agency heads he appoints, including defendant Kristi Noem and defendant Department of Homeland Security. Trump is sued in his official capacity.

9. Defendant Kristi Noem is Secretary of U.S. Department of Homeland Security (DHS) and a member of Defendant Trump's cabinet. Since at least the beginning of June 2025, Noem, in her official capacity, has directed Immigration and Customs Enforcement ("ICE"), U.S. Customs and Border Protection ("CBP"), Federal Protective Service (FPS), and their subordinate agencies and subcomponents, to collectively carry out or support the ongoing DHS operation at the Eugene ICE Building; and to detain, arrest, and charge protesters outside of that building. Defendant Noem is sued in her official capacity.

10. Defendant U.S. Department of Homeland Security ("DHS") is a cabinet-level department of the executive branch of the United States government, responsible for border security, anti-terrorism, immigration, and customs. It was created in 2002, combining 22 different federal departments and agencies into a single Cabinet agency. ICE, CBP, and the DHS Management Directorate are component agencies within the Department of Homeland Security. Homeland Security Investigations ("HSI") and Enforcement and Removal Operations ("ERO"), including their respective Special Response Teams, are component subagencies within ICE. Border Patrol and the Office of Field Operations (including its Special Response Team ("CBP-SRT")) are components of CBP. The Federal Protective Service ("FPS") is a subordinate agency housed within the DHS Management Directorate. DHS and its sub-components carry out their mission through a wide variety of federal agents employed by DHS, and sometimes other agencies, that are assigned to, act at the direction of, with the authority of, or with the deputization of DHS and/or its components ("DHS officers"). Upon information and belief, since at least the beginning of June 2025, DHS has coordinated a multi-agency operation that integrates various DHS components, including ERO, HSI,

Border Patrol, CBP-SRT, and FPS, as well as officers from other federal agencies, to engage in law enforcement and building security at the Eugene ICE Building.

## JURISDICTION AND VENUE

11. This Court has subject matter jurisdiction over Plaintiffs' claims under 28 U.S.C. § 1331, because Plaintiffs' causes of action arise under the United States Constitution and 28 U.S.C. §§ 2201-2202 and 5 U.S.C. §§ 702 and 706. 5 U.S.C. § 701 *et seq*.

12. The challenged rule is final and reviewable agency action; it marks the consummation of agency decision-making, mandates obligations on Plaintiffs, and carries legal consequences, pursuant to 5 U.S.C. § 704.

13. The Court may issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201-2202 and grant permanent injunctive relief. 16 U.S.C. §§ 1855(f), 1861(d); 5 U.S.C. § 706.

14. Venue is proper in the District of Oregon under 28 U.S.C. § 1391(b)(2), (e)(1), because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in the District of Oregon and because Defendants are officers or employees of a U.S. agency acting in their official capacities or under color of the legal authority of those agencies.

## FACTUAL ALLEGATIONS

15. In Eugene, Oregon, the downtown federal building where ICE, IRS, the VA and other federal agencies are housed, has long been a traditional location for assembly and protest. The building is surrounded on all four sides with public (City of Eugene) sidewalks, and contains a plaza area near the corner of Pearl Street and 7th Avenue, both of which have long functioned as quintessential traditional public fora.

16. Congress enacted 40 U.S.C. § 1315 to authorize the Secretary of Homeland Security to "protect the buildings, grounds, and property that are owned, occupied, or secured by the Federal Government and the persons on the property." Violations are criminalized under 40 U.S.C. §

1315(c).

17. The pre-existing regulations regarding federal property are codified at 41 C.F.R. § 102-74.365 *et seq*.

18. In January 2025, the federal government issued proposed new regulations pursuant to 40 U.S.C. 1315, regarding what it characterized as "Rioter Violence at Federal Buildings." 90 Fed. Reg. 4398; https://www.dhs.gov/news/2025/11/05/dhs-announces-advanced-charging-authority-address-rioter-violence-federal-buildings. The 2025 DHS rule expands coverage to conduct in "areas outside" federal sites to the "extent necessary to protect the property and persons on the property." They also expand the criminalization of activities that involve protected assembly and expression, *i.e.* "prohibited conduct -- unusual noise."

19. The rules were finalized in June 2025. 90 Fed. Reg. 24, 217 (June 9, 2025) (to be codified at 6 CFR pt. 139.5).

20. These new proposed regulations were scheduled to go into effect January 1, 2026. *Id.*

21. On November 5, 2025, the federal government announced that the new regulations were "accelerated," and would actually go into effect that day (November 5, 2025). *Id*. The government announced in a press release: "6 C.F.R. Part 139, initially scheduled to take effect January 1, 2026, will instead go into effect November 5, 2025 to address a recent surge in security and public safety threats." *Id*.

22. Despite the fact that the new regulations state that they are not intended to violate state and/or federal law, they do in fact violate Oregon and US constitutions, and are obviously intended to chill the peoples' First Amendment rights on traditional public forums.

23. The new regulations not only permit federal agents to enforce federal regulations on federal property, but appear to give them the authority to enforce these regulations off federal property, including upon traditional public fora that are not federal property.

24. Additionally, the new regulations are so vague and ambiguous that they blatantly violate First Amendment rights and provide federal agents with unfettered and expansive discretion to target, detain, arrest and attempt to prosecute lawful protected conduct.

25. In Eugene, Oregon, a wide coalition of activists opposed to the Trump regime immigration policies and roundups regularly show up each Tuesday at the federal building where the ICE offices are located. Many activists show up Monday through Friday. Activists, including Plaintiffs, engage in a variety of protected activities there, including but not limited to assembling on public property (public sidewalks, plazas, and other areas adjacent to the federal building); giving speeches and singing protest songs; informing immigrants of their rights and accompanying and tracking immigrants to their check-ins; monitoring ICE activities; educating the public about political issues; chanting; marching; and using a megaphone to voice their opinions about ICE and its tactics.

26. In Eugene, DHS has threatened, detained, and arrested activists engaged in lawful First Amendment activity on public sidewalks, and has now begun using the new regulations to harass, retaliate and detain activists, alleging disorderly conduct for "unusual noise," despite the fact that the conduct targeted is lawful assembly and speech activity.

27. Prior to the new regulations, Eugene DHS had been misapplying the pre-existing regulations regarding federal property, for example citing protesters for "failure to preserve property" when they merely were standing on the grass directly next to the city sidewalk, without causing any damage to the grass. That pre-existing regulation provides:

What is the policy concerning the preservation of property?

All persons entering in or on Federal property are prohibited from --

(a) Improperly disposing of rubbish on property;

(b) Willfully destroying or damaging property;

(c) Stealing property;

(d) Creating any hazard on property to persons or things; or

(e) Throwing articles of any kind from or at a building or climbing upon statues, fountains or any part of the building.

41 C.F.R. § 102-74.380. Standing on the grass clearly does not fit within any of these categories.

28.     On November 18, 2025, Plaintiff Chloe Longworth was detained, arrested, and then issued a citation, apparently pursuant to the new regulations, for "unusual noise." At the time she was on the city-owned public sidewalk exercising her First Amendment rights, including using a megaphone and stating her opinions regarding the lack of moral character exhibited by ICE agents. DHS detained and arrested her, placed her in a detention cell within the ICE building, and gave her a citation, violation number 9233374. The copy of the citation provided to Ms. Longworth is very faint and several words are not legible, but it appears to be for "prohibited conduct -- unusual noise." DHS seized several items of Ms. Longworth's property. She was eventually released from custody.

29.     On or about December 1, 2025, the Assistant U.S. Attorney's office in Eugene informed Ms. Longworth's lawyer that the citation was being dismissed.

30.     On November 25, 2025, a DHS employee at the Eugene ICE building threatened Plaintiff Anna Lardner with arrest for "unusual noise" under the new regulations – the "noise" being her First Amendment-protected speech, speaking to the public through a megaphone, from a public sidewalk. Plaintiff Longworth was also present at that time, participating in the protest. Plaintiff Lardner was standing on the public sidewalk reading Timothy Snyder's book, "On Tyranny," to passing cars and pedestrians, using a megaphone. The DHS employee approached Ms. Lardner and informed her that she was making "unusual noise" and could be cited for federal disorderly conduct under the new regulations. Ms. Lardner responded that she had a First Amendment right to read into a megaphone on a public sidewalk. DHS responded that their new rules allow them to arrest and cite her anywhere, including the public sidewalk. She responded that the regulations did not permit them

Page 7 –   COMPLAINT

to violate her constitutional rights, and an attorney who was present as a National Lawyers Guild Legal Observer affirmed that statement, reminding DHS that their regulations do not allow them to contravene U.S. and Oregon constitutional rights within a traditional public forum. DHS retreated into the building without arresting Ms. Lardner. Soon thereafter, three Eugene Police Department officers arrived on the scene, telling Ms. Lardner they had been called by DHS because of the "noise." When a different lawyer directly asked the lead officer if he was threatening Ms. Lardner with arrest or believed she was committing a crime or had done so, he said no, that he just wanted people to be "aware" that there were other people trying to use the building. He stated that a DHS employee had told EPD that someone had reportedly been trying to get into the federal building to go to the Veterans' Affairs office but was unable to do so because of a megaphone in his face. The EPD officers then left.

31.  This explanation made little sense, and an eyewitness told the attorney that they had observed that person and that the megaphone had not been anywhere near that person, and that that person had actually gone into the building.

32.  Protests by Plaintiffs and others will continue at the Eugene ICE building. It is likely that Defendants will continue with their enforcement of the newly-enacted unconstitutional regulations – issuing warnings, as well as detaining, arresting, and charging Plaintiffs and other protesters outside of the Eugene ICE building; and will continue also to misapply the pre-existing regulations and statute to target speech they do not agree with.

33.  The intent to chill the constitutional rights of Plaintiffs and others who want to protest ICE misconduct is abundantly clear from this administration's public statements and actions. Defendants have shown clear bias and retaliation in the way they have treated Plaintiffs and others similarly situated, attempting to suppress viewpoints they do not like. For example, on September 25, 2025, President Trump issued a presidential memorandum directing the National Joint Terrorism

Task Force to investigate, prosecute, and disrupt individuals and groups that criticize law enforcement and border control policies and actions because such actions were "anti-American," and Pam Biondi recently issued orders to target people who advocate against current immigration policy, as well as other so-called "anti-American" opinions.

34. In addition to verbally target anyone who speaks out against the regime, DHS now conducts snatch and grabs at and around federal property against people of color as well as protesters, so that no one feels safe to lawfully protest in downtown Eugene on the public sidewalks that surround the ICE building.

35. Plaintiffs are two of the more outspoken protesters at the ICE building, and appear to have been targeted by DHS because of their speech and because of their appearance of being leaders of the weekly protests.

36. Although Plaintiffs continue to show up and protest, Defendants' activities at the Eugene ICE building against Plaintiffs and others would deter a person of ordinary resolve from assembling and exercising their constitutional rights to protest outside the building.

37. As a result of the conduct alleged herein Plaintiffs and others similarly situated are suffering irreparable injury, and will likely suffer recurring injuries like the ones Defendants already have inflicted on them.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### ADMINISTRATIVE PROCEDURES ACT – UNLAWFUL REGULATIONS

38. Plaintiffs incorporate all paragraphs above by reference as if fully set forth herein.

39. The Administrative Procedure Act (APA) requires this Court to hold unlawful and set aside any agency action, finding, or conclusion that is found to be arbitrary, capricious, an abuse of discretion, or not otherwise in accordance with law; contrary to constitutional right, power, privilege, or immunity; in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;

or without observance of procedure required by law. 5 U.S.C. § 706(2)(A)-(D).

40. By issuing the new regulations, Defendants violated the APA in one or more of the following ways:

    a. Issuing regulations that are arbitrary, capricious, an abuse of discretion, and/or not otherwise in accordance with law;

    b. Issuing regulations that are contrary to constitutional right, power, privilege, or immunity;

    c. Issuing regulations in excess of statutory jurisdiction, authority, or limitations, and/or short of statutory right.

41. In particular, the new regulations are unconstitutional because they are vague and overbroad on their face, allowing unfettered discretion to the government regarding how to interpret the regulatory language; do not give reasonable notice to people as to whether their conduct falls outside the bounds of the law; impose unreasonable time, place and manner restrictions; and purport to allow the government to detain, arrest, and cite people for protected First Amendment speech and expressive conduct.

42. The new regulations are void and unenforceable.

43. As a proximate result of Defendants' unlawful policies/directives, Defendants' unlawful actions, described herein, have caused and are causing Plaintiffs irreparable harm. Plaintiffs have suffered and will continue to suffer injuries, including deprivation of liberty and constitutional injury, for which no adequate remedy exists apart from review under the Administrative Procedure Act (APA).

44. Absent injunctive relief, Defendants will continue to take the unlawful actions described herein against Plaintiffs and similarly situated people, causing ongoing and irreparable harm.

45. Plaintiffs have no other adequate remedy in any court to redress the harms caused by this final agency action, and is entitled to declaratory and injunctive relief.

46. Plaintiffs seek declaratory and injunctive relief to prohibit Defendants from engaging in further viewpoint-based enforcement actions, and such additional relief as the Court deems just and proper pursuant to 28 U.S.C. §§ 2201-2202.

## SECOND CAUSE OF ACTION
## FIRST AMENDMENT VIOLATIONS

47. Plaintiffs incorporate all paragraphs above by reference as if fully set forth herein.

48. Plaintiffs regularly engage in constitutionally protected acts of assembly, speech, and expressive conduct in traditional public fora.

49. Defendants' conduct described herein would chill a person of ordinary firmness from continuing to engage in nonviolent protest and other constitutionally protected activities.

50. Plaintiffs' protected First Amendment activities are a substantial or motivating factor in Defendants' conduct.

51. Defendants violated Plaintiffs' First Amendment rights by 1) attempting to restrict Plaintiffs' First Amendment activities based on content; 2) failing to narrowly tailor their restrictions to a compelling government interest; 3) seeking to impose unreasonable time, place and/or manner restrictions on Plaintiffs' constitutionally protected speech and actions in a traditional public forum; and/or 4) retaliating against Plaintiffs because of their protected speech and actions.

52. Defendants do not have a compelling or important government interest in silencing, detaining, arresting, or citing the Eugene ICE protesters, sufficient to override the protesters' constitutional rights.

53. Defendants cannot show that they lack other, less restrictive means of protecting any property or safety interests they might assert other than by threatening, detaining, arresting, and charging protesters under the facts set forth herein.

54. As a proximate result of Defendants' unlawful actions, described herein, Plaintiffs have suffered irreparable harm, including detention, arrest, prosecution, and fear of such actions, deprivation of liberty and constitutional injury, for which no adequate remedy exists apart from review under the Administrative Procedure Act (APA).

55. Absent injunctive relief, Defendants will continue to take the unlawful actions described herein against Plaintiffs and similarly situated people, causing ongoing and irreparable harm.

56. Plaintiffs have no other adequate remedy in any court to redress the harms caused by this final agency action, and is entitled to declaratory and injunctive relief.

57. Plaintiffs seek declaratory and injunctive relief to prohibit Defendants from engaging in further viewpoint-based enforcement actions, and such additional relief as the Court deems just and proper pursuant to 28 U.S.C. §§ 2201-2202.

### THIRD CAUSE OF ACTION
### 28 U.S.C. § 2201 -- DECLARATION OF RIGHTS

58. Plaintiffs incorporate each of the paragraphs of the complaint as if restated fully herein.

59. In a case of actual controversy within its jurisdiction, any court of the United States may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought, under 28 U.S.C. § 2201.

60. There is an actual and justiciable controversy within the jurisdiction of this court, inasmuch as one or more federal Defendants have adopted and continue to enforce federal regulations, policies, and directives that authorize detention, arrest, charging, and use of force, endangering Plaintiffs' First Amendment activities.

61. A judicial declaration will serve a useful purpose in clarifying the parties' legal relations, confirming the limits of federal authority under 40 U.S.C. § 1315 and 8 U.S.C. § 1357, and

preventing future unlawful use of force against Plaintiffs and similarly situated individuals. Further, because the government seeks to chill the public's right to lawfully protest, a Court order affirming the peoples' rights to lawfully protest on traditional public forums such as public sidewalks and exterior areas, is necessary to protect the full breadth of first amendment rights in this situation.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request the Court grant the following relief:

1. Injunctive relief, as described herein;

2. Declaratory relief, as described herein;

3. An order vacating and setting aside Defendants' unlawful regulations, policies, directives, and agency actions, as described herein;

4. An award of attorneys' fees and costs, pursuant to the Equal Access to Justice Act, 28 U.S.C. 2412; and

5. Any other relief this Court deems just and proper.

DATED: December 5, 2025.

        /s/ Lauren Regan
Lauren Regan, OSB # 970878
Email: lregan@cldc.org
Marianne Dugan, OSB # 932563
Email: mdugan@cldc.org
CIVIL LIBERTIES DEFENSE CENTER
1711 Willamette Street Ste 301 # 359
Eugene, OR 97402
Telephone: 541-687-9180

Attorneys for Plaintiff