Lauren Regan, OSB # 970878
Email: lregan@cldc.org
Marianne Dugan, OSB # 932563
Email: mdugan@cldc.org
CIVIL LIBERTIES DEFENSE CENTER
1711 Willamette Street Ste 301 # 359
Eugene, OR 97401
Telephone: 541-687-9180

    Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT<br>DISTRICT OF OREGON

| | |
|---|---|
| CHLOE LONGWORTH and ANNA LARDNER,<br><br>    Plaintiffs,<br><br>    v.<br><br>DONALD J. TRUMP, President of the United States, in his official capacity; KRISTI NOEM, Secretary, U.S. Department of Homeland Security (DHS), in her official capacity; and U.S. DEPARTMENT OF HOMELAND SECURITY,<br><br>    Defendants. | No. 6:25-cv-2268-AA<br><br>DECLARATION OF CHLOE LONGWORTH IN SUPPORT OF PLAINTIFFS' MOTION FOR TRO AND PI |

    1.    My name is Chloe Longworth, and I make the statements in this declaration based upon my personal knowledge. I am competent to testify to the matters stated herein.

    2.    I reside in Eugene, Oregon, and I am a local community member and human rights activist who strongly opposes the current immigration policies and tactics. I regularly attend protests against ICE and deportations, and stand in solidarity with immigrant community members.

    3.    In Eugene, Oregon, the downtown federal building where ICE, IRS, the VA and other federal agencies are housed is surrounded on all four sides with public (City of Eugene) sidewalks, and contains a plaza area near the corner of Pearl Street and 7th Avenue, both of which have long been as a traditional location for assembly and protest.

    4.    In Eugene, a wide coalition of activists opposed to the Trump regime immigration

policies and roundups regularly show up each Tuesday at the federal building where the ICE offices are located. I generally protest there every Tuesday, but have protested on other days as well during 2025. Many activists show up Monday through Friday.

5. I engage in a variety of protected activities at the ICE building, including assembling on public property (the Eugene city-owned public sidewalks, the federal plaza, and other areas adjacent to the federal building); giving speeches and singing protest songs; monitoring ICE activities; educating the public about political issues; chanting; marching; and using a megaphone to voice my opinions about ICE and its tactics.

6. In Eugene, DHS has threatened, detained, and arrested me and other activists engaged in lawful First Amendment activity on public sidewalks, and has now begun using the new regulations to harass, retaliate and detain us, alleging disorderly conduct for "unusual noise," despite the fact that the conduct targeted is lawful assembly and speech activity.

7. Prior to the new regulations, I observed Eugene DHS citing protesters for "failure to preserve property" when they merely were standing on the grass directly next to the city sidewalk, without causing any damage to the grass.

8. On November 18, 2025, I was detained, arrested, and then issued a citation, apparently pursuant to the new regulations, for "unusual noise." At the time, I was on the city-owned public sidewalk exercising my First Amendment rights, including using a megaphone and stating my opinions regarding the lack of moral character exhibited by ICE agents. DHS detained and arrested me, placed me in a detention cell within the ICE building, and gave me a citation, violation number 9233374. Exhibit A. The copy of the citation provided to me is very faint and several words are not legible, but it appears to be for "prohibited conduct -- unusual noise." DHS seized several items of my property. I was eventually released from custody.

9. On November 19, 2025, the day after my arrest, I returned to the ICE building to

protest. I was at the federal building on the north side (6th Avenue side), yelling down into the parking well at an officer who was in there, expressing my opinions regarding ICE and its officers, specifically my dislike of their actions. A federal officer said: "You need to stop yelling, Chloe -- I don't want to have to come up there and arrest you again." After that I did quiet my voice a bit, because I was unsure at that time if that was something I could be arrested for. I was with a small crowd of people, and I was the only one who was told to stop yelling.

10. On November 25, 2025, I witnessed a DHS employee at the Eugene ICE building threatened Plaintiff Anna Lardner with arrest for "unusual noise" under the new regulations – the "noise" being her First Amendment-protected speech, speaking to the public through a megaphone, from a public sidewalk. I was present at that time, participating in the protest. Ms. Lardner was standing on the public sidewalk reading from Timothy Snyder's book, "On Tyranny," to passing cars and pedestrians, using a megaphone. The DHS employee approached Ms. Lardner and informed her that she was making "unusual noise" and could be cited for federal disorderly conduct under the new regulations. Ms. Lardner responded that she had a First Amendment right to read into a megaphone on a public sidewalk. DHS responded that their new rules allow them to arrest and cite her anywhere, including the public sidewalk. She responded that the regulations did not permit them to violate her constitutional rights, and an attorney who was present as a National Lawyers Guild Legal Observer affirmed that statement, reminding DHS that their regulations do not allow them to contravene U.S. and Oregon constitutional rights within a traditional public forum. DHS retreated into the building without arresting Ms. Lardner.

11. Soon after that, I observed three Eugene Police Department officers arriving on the scene, telling Ms. Lardner they had been called by DHS because of the "noise." When a different lawyer directly asked the lead officer if he was threatening Ms. Lardner with arrest or believed she was committing a crime or had done so, he said no, that he just wanted people to be "aware" that

Page 3 –   DECL. OF LONGWORTH IN SUPPORT OF PLAINTIFFS' MOTION FOR TRO AND PI

there were other people trying to use the building. He stated that a DHS employee had told EPD that someone had reportedly been trying to get into the federal building to go to the Veterans' Affairs office but was unable to do so because of a megaphone in his face. The EPD officers then left.

12. The EPD officers' explanation made little sense, and from what I observed, at no point did Ms. Lardner go up to the lobby doors with her megaphone, so there was no way she could have been blocking the entrance.

13. In early December 2025, my attorney told me that the Assistant U.S. Attorney's office in Eugene had informed her that the citation was being dismissed.

14. I have observed in the weeks after my arrest that other people have been intimidated out of using the megaphone, until I was able to help convince them that they would not be arrested for using a megaphone on the sidewalk, due to such an arrest being unconstitutional.

15. I have experienced multiple instances of the federal agents citing the new regulations to try to scare people into moving off of the same side of the street as the federal building. A specific instance was, on the day of my arrest, as I was leaving the federal building block to go off-site, I saw (for the first time) a group of about 20 or 30 protesters standing across the street from where the back gate is (on the west side of Pearl St. next to 6th Avenue). Those protesters had previously held their protests on the sidewalk next to the ICE building.

16. I will continue to show up and protest at the Eugene ICE building, weekly or more frequently; and the ongoing threat of arrest, detention, and criminal citation is an ongoing harm to my constitutional right to express myself, and to my liberty.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed this 8th day of December, 2025, at Eugene, Oregon.

                                           /s/ Chloe Longworth
                                           Chloe Longworth