Lauren Regan, OSB # 970878
Email: lregan@cldc.org
Marianne Dugan, OSB # 932563
Email: mdugan@cldc.org
CIVIL LIBERTIES DEFENSE CENTER
1711 Willamette Street Ste 301 # 359
Eugene, OR 97401
Telephone: 541-687-9180

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT
DISTRICT OF OREGON

| | |
|---|---|
| CHLOE LONGWORTH and ANNA LARDNER, <br><br> Plaintiffs, <br><br> v. <br><br> DONALD J. TRUMP, President of the United States, in his official capacity; KRISTI NOEM, Secretary, U.S. Department of Homeland Security (DHS), in her official capacity; and U.S. DEPARTMENT OF HOMELAND SECURITY, <br><br> Defendants. | No. 6:25-cv-2268-AA <br><br> DECLARATION OF ANNA LARDNER <br><br> IN SUPPORT OF PLAINTIFFS' MOTION FOR TRO & PI |

1. My name is Anna Lardner. I am a plaintiff in this case and I make the statements in this declaration based upon my personal knowledge. I am competent to testify to the matters stated herein.

2. I am a community member and human rights activist who is regularly present at the Federal ICE building in Eugene, OR. I began assembling and exercising my free speech rights at the Eugene federal building on or around July 1, 2025 to the present.

3. Prior to November 5, 2025, I was contacted by DHS agents while I was present at the following locations while engaged in lawful First Amendment activity. On or about September 23, 2025, I was at the Eugene federal building standing in a crowd of other protesters while admonishing federal officers for having just arrested another protester while that individual was filming. While I

was exercising these free speech rights, a federal officer aimed a can of pepper-spray in my direction and discharged it, expelling a large cloud at me and one or two other protesters in my vicinity.

4. On or about October 2, 2025, I was protesting in front of the Eugene federal building lobby with a megaphone by the glass doors, urging federal officers in the lobby, something to the effect of ceasing their complicity with ICE kidnappings. DHS FPS officers emerged after approximately 15-30 minutes, advising me, something to the effect of the following: that the megaphone use was creating a disturbance, that I was being given a "formal warning," and that I would be cited or arrested if I continued. I moved to the public sidewalk in front of the building to continue my protest activities on the megaphone.

5. On or about November 5, 2025, DHS contacted me on the west side of the Eugene federal building on Pearl Street between 6th and 7th Avenues at approximately 8:00 am. I had arrived at the building that morning to protest recent ICE detentions of immigrants, who were being held at the building. I was standing on the sidewalk with a megaphone, decrying ICE's actions. DHS FPS officers approached me and advised that new federal regulations had just gone into effect and summarized something to the effect of the following: that it was now illegal to use megaphone at the building or on adjacent sidewalks, that it was illegal to wear a mask on federal property, and that federal officers were now able to enforce federal property regulations on public areas adjacent to the building. They threatened to cite or arrest me if I continued. I moved to the street off federal property and continued to denounce ICE kidnappings on the megaphone. .

6. On November 25, 2025, DHS threatened legal action against me while I was standing on the city-owned public sidewalk near the corner of 6th Ave. and High Street, using a megaphone to read from Timothy Snyder's book, "On Tyranny," to stopped traffic and pedestrians as they walked by. I was facing the public roadway. At approximately 12:30 p.m., five DHS FPS officers approached me. A female DHS officer said she was giving me a warning to stop using the

megaphone, that I was violating sections of the "new 6 CFR" by making "inappropriate, loud, nuisance noises," and that even though I was not on federal property, an unspecified "they" was "complaining." A lawyer on the scene said that the new regulations could not contradict the First Amendment and that the sidewalk was a public forum. A male DHS officer then stated that the noise was "creating a problem," that a "building employee" had made a complaint, and that they "could not do their business" due to the noise. He then directly addressed me, saying "So this is your verbal warning." I responded, in summary, that the sidewalk is a public forum, that I was speaking to the cars in traffic at a loud intersection, that I needed a megaphone to convey my message to my intended audience, and that my megaphone was angled towards the street. Following this exchange, the DHS officers retreated inside the building and did not arrest me that day.

    7.    However, about two hours later, three uniformed Eugene Police Department officers arrived at my location and told me that DHS had called them to report that the noise from the protest was somehow interfering with other people who wanted to come into the building. A lawyer on the scene asked the police if they were threatening me with arrest or if they believed I was breaking the law. They said, no, I was not breaking the law, but they just wanted the protesters to be "aware" that there were people being affected by the noise. They then left my location. Several other protestors watched both of these interactions take place. Many voiced worries that they would not be able to stand up to law enforcement like I did, and were concerned about remaining on the public sidewalk for fear they would be targeted by DHS.

    8.    I did not observe the protest interfering with anyone's ability to enter the federal building.

    9.    Many fellow protestors and volunteers are afraid they will be wrongfully targeted by DHS and/or arrested or threatened with arrest. As a result, many folks now stand across the street or have stopped attending events at the federal building. For example, during a protest at the building

on or about November 18, 2025, I observed a crowd of protesters standing across the street from the federal building on 6th and Pearl instead of standing on the same side as the building. I asked one of the protesters why they were on that side of the street and they told me something to the effect of how they believed they were no longer allowed on the other side of the street to protest without being threatened with arrest.

10. I have read the new regulations, and even with a Master's Degree, I am unable to discern the legal boundaries of these new regulations. I believe the intent of these overly broad regulations was to give unfettered discretion to DHS and other federal agents to chill and intimidate activists because they do not want people to protest their illegal and immoral conduct.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed this 8th day of December, 2025, at Eugene, Oregon.

                                                                                                                 /s/ Anna Lardner
                                                                                                                Anna Lardner