IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION


CHLOE LONGWORTH; ANNA LARDNER,                    Civ. No. 6:25-cv-2268-AA

                    Plaintiffs,                    **OPINION & ORDER**

          v.

DONALD J. TRUMP, KRISTI NOEM,
and U.S. DEPARTMENT OF HOMELAND
SECURITY,

                    Defendants.
_____

AIKEN, District Judge.

       This case comes before the Court on a Motion for Temporary Restraining
Order, ECF No. 8, filed by Plaintiffs Chloe Longworth and Anna Lardner.  Plaintiffs
seek to enjoin Defendants Donald A. Trump, Kristi Noem and the U.S.  Department
of Homeland Security ("DHS")  (collectively, "Defendants")  from enforcing recently
enacted Federal Regulations, particularly  the  regulation  codified  as  6 CFR §
139.35(c).  For the reasons set forth below, the motion is GRANTED consistent with
the opinion below.

## LEGAL STANDARD

       "In deciding whether to grant  a motion for a  temporary restraining order
('TRO'), courts look to substantially the same factors that apply to a court's decision
on whether to issue a preliminary injunction. *Pac. Kidney & Hypertension LLC v.*

*Kassakian*, 156 F. Supp.3d 1219, 1222 (D. Or. 2016). A preliminary injunction is an "extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). A plaintiff seeking a preliminary injunction must show (1) that he or she is likely to succeed on the merits; (2) he or she is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of the equities tips in his or her favor; and (4) an injunction is in the public interest. *Id.* at 20.

In the Ninth Circuit, courts may apply an alternative "serious questions" test which allows for a preliminary injunction where a plaintiff shows that "serious questions going to the merits" were raised and the balance of hardships tips sharply in plaintiff's favor, assuming the other two elements of the *Winter* test are met. *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131-32 (9th Cir. 2011). This formulation applies a sliding scale approach where a stronger showing on one element may offset a weaker showing in another element. *Id.* at 1131. Nevertheless, the party requesting a preliminary injunction must carry its burden of persuasion by a "clear showing" of the four elements set forth above. *Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th Cir. 2012).

## DISCUSSION

Plaintiffs allege that Defendants are unlawfully impinging on and chilling Plaintiffs free speech rights in a traditional public forum through the use of vague standards promulgated in newly enacted federal regulation, specifically 6 C.F.R. § 139.35(c), which criminalizes "unusual noise." Plaintiffs allege that Defendants'

actions have the effect of chilling their and others right to free speech by criminalizing constitutionally protected speech in traditional public forums. Plaintiffs move for a temporary restraining order "enjoining implementation of the recently-issued regulations restricting behavior at and near federal property." Pl. Mot. 1.

## I.    Background

The following facts are derived from the Complaint, ECF No. 1, and the Declarations submitted in support of the TRO motion.

Plaintiffs Chloe Longworth and Anna Lardner regularly protest on city-owned sidewalks in front of the federal building in Eugene, Oregon, located between 6th and 7th Avenues and Pearl and High Streets. Compl. ¶ 2. Plaintiffs protest there at least once per week, and sometimes more frequently. *Id.*

In June 2025, DHS finalized new rules regarding the protection of federal property. *Id.* ¶ 19. The new rules were scheduled to go into effect January 1, 2026, but on November 5, 2025, the federal government accelerated the effective date of the new regulations to be effective immediately. *Id.* ¶ 20-21. The new rules expanded the geographic scope of the previous rules to include areas outside federal property. *Id.* ¶ 18. Specifically, the regulation now found at 6 C.F.R. § 139.35(c) prohibits "Creating a loud or unusual noise, noxious odor, or other nuisance." (the "Unusual Noise Provision"). This applies to "Federal property or in areas outside Federal property that affects, threatens, or endangers Federal property or persons on Federal property. *Id.* The regulations contain applicable definitions at 6 C.F.R. § 139.15, but neither "loud" nor "unusual" is defined. Nuisance is defined as "a condition, activity, or

situation, to include a loud noise or foul odor, that interferes with the use or enjoyment of Federal property." *Id.* Put together, the Unusual Noice Provision seeks to criminalize creating a loud or unusual noise in areas outside Federal property that affects persons on Federal property and interferes with the use or enjoyment of Federal property.

On November 18, 2025, Ms. Longworth was detained, arrested, and issued a citation for "unusual noise" for using a megaphone on the city-owned sidewalks outside of the federal building. Longworth Decl. ¶ 8, ECF No. 9. The next day, Ms. Longworth returned to site of the protest, and a federal officer, calling her by name, threatened to arrest her for "yelling." *Id.* ¶ 19. The citation issued on November 18, 2025, was dismissed by the US Attorney's office in early December 2025. Compl. ¶ 29.

On November 25, 2025, Ms. Lardner was approached by a DHS employee and threatened with arrest for "unusual noise" for speaking through a megaphone on the public sidewalk. *Id.* ¶ 30.

## II.    Success on the Merits

To prevail on a motion for preliminary injunction, a plaintiff must show either a likelihood of eventual success on the merits or, under the Ninth Circuit's alternative "sliding scale" formulation of the test, serious questions going to the merits of their claims. *Winter*, 555 U.S. at 20; *All. for the Wild Rockies*, 632 F.3d at 1131-32. However, a court's decision on a motion for preliminary injunction or TRO is not a

ruling on the merits of the claim. *Sierra On-Line, Inc. v. Phoenix Software, Inc.*, 739 F.2d 1415, 1422 (9th Cir. 1984).

Here, Plaintiffs allege that Defendants' enforcement activities related to 6 C.F.R. § 139.35(c) on city-owned sidewalks violate Plaintiffs' right to free speech guaranteed by the First Amendment and has the effect of chilling their speech and the speech of others similarly situated. Plaintiffs allege that the Unusual Noise Provision is void for vagueness under the Due Process Clause of the Fifth Amendment and for overbreadth under the First Amendment.

The Supreme Court has held that "'public places' historically associated with the free exercise of expressive activities, such as streets, sidewalks, and parks, are considered, without more, to be 'public forums.'" *U.S. v. Grace*, 461 U.S. 171, 177 (1983) (collecting cases).

> Traditional public forum property occupies a special position in terms of First Amendment protection and will not lose its historically recognized character for the reason that it abuts government property that has been dedicated to a use other than as a forum for public expression. Nor may the government transform the character of the property by the expedient of including it within the statutory definition of what might be considered a non-public forum parcel of property.
> *Id.* at 180.

The Supreme Court has also held that if a law's prohibitions are not clearly defined, i.e., that they are vague, the law violates due process. *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972). A vague law has a chilling effect, as "uncertain meanings inevitably lead citizens to 'steer far wider of the unlawful zone[.]'" *Id.* at 109. A law must "give the person of ordinary intelligence a reasonable opportunity to know what is prohibited." *Id.* at 108.

Overbreadth is a separate issue and asks if the regulation reaches "constitutionally protected conduct." *Id.* at 114. "The crucial question . . . is whether the ordinance sweeps within its prohibitions what may not be punished under the First and Fourteenth Amendments." *Id.* To successfully challenge an enactment for overbreadth, a court must find "a realistic danger that the statute itself will significantly compromise recognized First Amendment protections not before the Court." *Abolish Abortion Oregon v. City of Grants Pass*, 593 F. Supp. 3d 1047 (D. Or. 2022) (quoting *Members of City Council of City of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 801 (1984)).

This is not the first court to look at a prohibition on "loud or unusual noise." *See, e.g. United States v. Thomas,* No. 13-3370M-001-PHX-LOA, 2013 WL 5783408 (D. Ariz. Oct. 28, 2013) *3 (loud or unusual noise within VA center); *United States v. Wasylyshyn*, 979 F.3d 165, 175 (2d Cir. 2020) (loud or unusual noise within a courthouse). But the phrase "loud or unusual" cannot be divorced from its context. *See Grayned*, 408 U.S. at 116 ("The nature of a place, the pattern of its normal activities, dictate the kinds of regulations of time, place, and manner that are reasonable"). It does not follow that because certain conduct may be prohibited within a courthouse or other facility, the same conduct can be prohibited in a traditional public forum of very different character.

Specifically, content-neutral restrictions are permitted in public forms if they are "narrowly tailored to serve a significant government interest, leave open ample alternative channels for communication of the information, and do not delegate overly

broad licensing discretion to a government official[,]" while "restrictions on speech in a nonpublic forum must only be reasonable in light of the purpose served by the forum and viewpoint neutral." *Askins v. U.S. Department of Homeland Security,* 899 F.3d 1035, 1044 (9th Cir. 2018) (internal quotation marks omitted).

Here, not only have Plaintiffs been arrested or threatened with arrest for using a megaphone in a traditional public forum, but Longworth was threatened with arrest for "yelling." This speaks to another reason for the impermissibility of vague or overbroad enactments: those enactments create the "danger[] of arbitrary and discriminatory application." *Grayned*, 408 U.S. at 109. Here, Plaintiffs are regular protestors who believe they were targeted by government agents for their speech. Whether or not they in fact were targeted, the danger of discriminatory application exists.

The Court need not address Plaintiffs' other challenges to the Unusual Noise Provision, as Plaintiffs' arguments regarding vagueness and overbreadth are sufficient at this stage to demonstrate likely success on the merits.

On this record, the Court concludes that Plaintiffs have shown a likelihood of success on the merits or, at the very least, have raised serious questions going to the merits of their First Amendment claims concerning the vagueness and overbreadth of the Unusual Noise Provision as applied to a traditional public forum. The Court concludes that this factor weighs in favor of Plaintiffs' requested injunction.

### III. Irreparable Harm

A plaintiff seeking an injunction must "must establish that irreparable harm is *likely*, not just possible." *Alliance for the Wild Rockies*, 632 F.3d at 1131 (emphasis in original).

Here, Plaintiffs have presented evidence of government action which has criminalized constitutionally protected speech, or at the very least, chilled such speech due to vagueness and overbreadth. The Ninth Circuit has repeatedly held that "the loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Klein v. City of San Clemente*, 584 F.3d 1196, 1208 (9th Cir. 2009).

The Court concludes that this factor weighs in favor of the requested injunction.

## IV.    Balance of the Equities and the Public Interest

Under the "balance of equities" analysis, a court must "balance the competing claims of injury" and "consider the effect on each party of the granting or withholding of the requested relief." *Winter*, 555 U.S. at 24 (internal quotation marks and citation omitted). The public interest inquiry, by contrast, "primarily addresses impact on non-parties rather than parties." *League of Wilderness Defs./Blue Mountains Biodiversity Project v. Connaughton*, 752 F.3d 755, 766 (9th Cir. 2014). When, as here, the government is a party to the action, these factors will merge. *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014).

Here, Plaintiffs have made a compelling showing that Unusual Noise provision has the unconstitutional effect of chilling speech through either vagueness,

overbreadth, or both. Upholding free speech—a fundamental right—is of "significant public interest." *Klein* 584 F.3d at1208.

The Court has not been presented, as of yet, with an argument for Defendants' countervailing interests in enforcing the Unusual Noise Provision. Because the regulation at issue had an original effective date of January 1, 2026, the Court can discern no hardship to Defendants in an injunction enjoining them from enforcing one part of one subsection of only one of those rules, and then only on the public sidewalks abutting the specific federal facility in Eugene at issue in this case.

The Court concludes that the balance of the equities and the public interest weigh sharply in favor of the requested injunction.

## V.    Bond

The Court "may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). Here, the Court concludes that the facts of this case do not support the necessity of a bond at this time. The Court may revisit the question of a bond, should a preliminary injunction be necessary in this case.

## CONCLUSION

For the reasons set forth above, Plaintiffs' Motion for Temporary Restraining Order, ECF No. 8 is GRANTED. The Court hereby issues an injunction ORDERING Defendants to refrain from enforcing the "loud or unusual noise" provision of 6 CFR § 139.35(c) on the sidewalks surrounding the federal building located between 6th and 7th Avenues and Pearl and High Streets in Eugene, Oregon.

This injunction shall continue in force and effect for fourteen (14) days from the date and time of this Order. Plaintiffs are ORDERED to promptly serve this Order on Defendants. Following service, the parties are ORDERED to confer on a date and time for a preliminary injunction hearing and on a briefing schedule on the question of a continuing injunction. Any questions regarding scheduling should be directed to the Courtroom Deputy.

It is so ORDERED and DATED this ___10th___ day of December 2025 at _3:05_ p.m..

 /s/Ann Aiken                                    
ANN AIKEN
United States District Judge