BRETT A. SHUMATE
Assistant Attorney General
Civil Division
MICHAEL VELCHIK
Senior Counsel to the Assistant
Attorney General

SCOTT E. BRADFORD, OSB #062824
SUZANNE MILES, CABN #242048
Assistant United States Attorney
District of Oregon
1000 SW Third Ave., Suite 600
Portland, Oregon  97204-2936
Telephone:     (503) 727-1102
Attorneys for Defendants

THE UNITED STATES DISTRICT COURT
DISTRICT OF OREGON

| | |
|---|---|
| CHLOE LONGWORTH; ANNA LARDNER, | Case No.: 6:25-cv-02268-AA |
| Plaintiffs, | MOTION TO DISMISS COMPLAINT FOR FAILURE TO STATE A CLAIM |
| v. | |
| DONALD J. TRUMP, President of the United States, in his official capacity; KRISTI NOEM, Secretary U.S. Department of Homeland Security ("DHS"), in her official capacity; U.S. DEPARTMENT OF HOMELAND SECURITY, | |
| Defendants. | |

**<u>MOTION TO DISMISS PLAINTIFFS' COMPLAINT</u>**

## INTRODUCTION

Federal statutes authorize the government to "protect the buildings, grounds, and property that are owned, occupied, or secured by the Federal Government," 40 U.S.C. § 1315(a), as well as "areas outside the property to the extent necessary to protect the property and persons on the property." *Id.* § 1315(b)(1); *see also id.* § 1315(e) (providing additional authorities to enforce Federal, state, and local laws "outside Federal property"). To this end, the Secretary of Homeland Security is authorized to "prescribe regulations necessary for the protection and administration of property owned or occupied by the Federal Government and persons on the property." *Id.* § 1315(c)(1). Exercising this authority, the Department of Homeland Security (DHS) issued new regulations establishing—among other things—a regulatory offense for "[c]reating a loud or unusual noise, noxious odor, or other nuisance." Protection of Federal Property, 90 Fed. Reg. 24217 (June 9, 2025) (codified at 6 C.F.R. § 139.35(c)).

Previously, Federal regulations prohibited "[a]ll persons entering in or on Federal property . . . from . . . exhibiting disorderly conduct, or exhibiting other conduct on property that—(a) Creates loud or unusual noise or a nuisance; (b) Unreasonably obstructs the usual use of" various areas, "(c) Otherwise impedes or disrupts the performance of official duties by Government employees, or "(d) Prevents the general public from obtaining the administrative services provided on the property in a timely manner." 41 C.F.R. § 102-74.390 (2015). This regulation was limited to conduct on property owned or leased by the General Services Administration (GSA), despite the fact that DHS had the statutory authority to regulate such conduct in areas outside Federal buildings to the extent necessary to protect property and persons on the property. In an effort to close this gap, promote consistency, and address new problems,

DHS issued a new regulation that, among other things, aligns the agency's regulations with its statutory authorities.

Plaintiffs Chloe Longworth and Anna Lardner sue to enjoin this regulation to the extent that it prohibits "loud" and unusual noises outside Federal buildings, on the grounds that this provision violates the First Amendment right to speech and the Administrative Procedure Act (APA) as contrary to law.  ECF No. 1 (Complaint).

The Court should dismiss Plaintiffs' Complaint for failing to state a claim.  Fed. R. Civ. P. 12(b)(6).  First, the regulation's restriction on "loud" or unusual noises is not vague or impermissibly overbroad in the statutory context and is consonant with the preexisting, constitutionally valid GSA regulation.  Second, the regulation is a content-neutral time, place, and manner restriction, consistent with the First Amendment.  Because the regulation comports with the requirements of the Constitution and Federal statute, it is also not contrary to law in violation of the APA.

## BACKGROUND

### A.    Statutory Background

The Constitution grants Congress the authority "to dispose of and make all needful Rules and Regulations respecting . . . Property belonging to the United States."  U.S. Const. art. IV, § 3, cl. 2.  Congress has long exercised this authority to protect federal buildings. *See, e.g.*, Pub. L. 80-566, 62 Stat. 281; 14 Fed. Reg. 2799 (May 27, 1949) (authorizing Federal Works Agency to appoint uniformed guards for this purpose).

In response to the terrorist attacks of September 11, 2001, Congress enacted the Homeland Security Act of 2002, Pub. L. 107-296, 116 Stat. 2135 (Nov. 25, 2002).  As relevant here, the statute transferred authority for law enforcement and related security functions for Federal properties from

the General Services Administration (GSA) to DHS.  The act requires the Secretary to "protect the buildings, grounds, and property that are owned, occupied, or secured by the Federal Government . . . and the persons on the property." 40 U.S.C. § 1315(a). This further authorized "[t]he Secretary, in consultation with the Administrator of General Services" to "prescribe regulations necessary for the protection and administration of property owned or occupied by the Federal Government and persons on the property."  *Id.* § 1315(c)(1).  Individuals who violate these regulations "shall be fined under title 18, United States Code, imprisoned for not more than 30 days, or both."  *Id.* § 1315(c)(2).

Significantly, this authority explicitly includes the ability to police the property and areas around federal buildings.  The Secretary may designate "officers and agents for duty in connection with the protection of property owned or occupied by the Federal Government and persons on the property, including duty in areas outside the property to the extent necessary to protect the property and persons on the property." *Id.* § 1315(b)(1). While engaged in such duties, these officers and agents are authorized to "conduct investigations, on and off the property in question, of offenses that may have been committed against property owned or occupied by the Federal Government or persons on the property."  *Id.* § 1315(b)(2)(E); *see also id.* § 1315(e) (providing additional authorities to enforce Federal, state, and local laws "outside Federal property").  Courts have interpreted these authorities as conferring on federal agencies "not only the right, but also the duty, to see that government property under its charge and control is in proper condition for normal usage, so that government business may continue."  *United States v. Cassiagnol*, 420 F.2d 868, 874 (4th Cir. 1970).  "It is reasonable and constitutional to delegate to the agency charged with maintenance and protection of government property the right to fix the hours and places where the

property may be entered by the public, as well as minimum acceptable conduct thereon, and to provide for the punishment of those violating such regulations." *Id.* at 876–77.

**B.    Regulatory Background**

Previously, Federal regulations limited loud and unusual noises only on GSA property. Specifically, 41 C.F.R. § 102-74.390 (2015) provided:

> All persons entering in or on Federal property are prohibited from loitering, exhibiting disorderly conduct, or exhibiting other conduct on property that—
>
> (a) Creates loud or unusual noise or a nuisance;
>
> (b) Unreasonably obstructs the usual use of entrances, foyers, lobbies, corridors, offices, elevators, stairways, or parking lots;
>
> (c) Otherwise impedes or disrupts the performance of official duties by Government employees; or
>
> (d) Prevents the general public from obtaining the administrative services provided on the property in a timely manner.

Plaintiffs do not allege that this prohibition on "loud or unusual noise" is unconstitutionally vague or violates the First Amendment.

On January 15, 2025, DHS issued a notice of proposed rulemaking for Protection of Federal Property, 90 Fed. Reg. 4398 (Jan. 15, 2025). This explained that "[o]ver the past decade, DHS has encountered a myriad of criminal misconduct directed at and occurring on federal property, including violent acts committed by active shooters, assaults and disturbances committed by competing and conflicting individuals or groups, and increased threats, harassment, and hazards perpetrated or presented by bad-faith factors." *Id.* at 4399. In fiscal year 2022 for example, the Federal Protective Service responded to 1,292 threats directed towards federal facilities and their occupants; conducted 58,084 protective security officer post inspections; stopped more than

189,462 weapons and prohibited items; made 505 arrests; and responded to over 17,000 incidents. *Id.* at 4400.

In this context, DHS noted that existing regulations are limited to "only when the conduct is committed on the property itself and not adjacent thereto." *Id.* at 4401. The regulations are therefore "not as comprehensive as contemplated by 40 U.S.C. 1315" and the "proposed rulemaking is meant to close these enforcement gaps." *Id.* These regulations are "[i]nformed by lessons learned from terrorist attacks and other criminal misconduct" and "intended to address the day-to-day criminal activity encountered by DHS on Federal property." *Id.* Relevant here, the goal is to "permit the charging of regulatory violations occurring near or adjacent to federal property." *Id.* This will allow DHS to "more effectively effectuate crowd management by citing and releasing criminal actors rather than requiring an arrest and detention, thus permitting officers to respond to more serious criminal activity and preserve limited detention resources." *Id.* Further, such "regulatory charges serve to fill the void where there is no applicable federal statutory charge applicable to the conduct and no MOU permitting DHS to charge state or local offenses." *Id.* These "serve as a lower-level charging option for subjects whose criminal conduct is less significant and does not warrant higher level charges under Title 18." *Id.* Finally, the "proposed revisions would also promote equity by allowing the same charging options for individuals committing the same conduct regardless of whether they are standing on or merely adjacent to the property." *Id.*

With respect to regulations concerning noise, the notice explains that "Section 139.35(c) would prohibit creating loud or unusual noises, noxious odors, or other nuisances that affect the safety of persons on Federal property, or otherwise disrupts Government functions on the property." *Id.* at 4408. This "would be functionally identical and textually similar to the existing

provision in 41 CFR 102-74.390(a)" with the one difference being the inclusion of "a prohibition of noxious odors as a specific type of prohibited nuisance." *Id.* at 4408. This was included in response to "stick-bombs" and "other odor-emitting devices in such a manner as to adversely impact Federal property and its occupants." *Id.* at 4408. The regulation further noted that "[t]he existing prohibition against loud or unusual noises remains necessary to ensure persons, particularly through use of bullhorns, megaphones, or other audio equipment, do not disturb or otherwise interfere with the performance of official Government functions, particularly the provision of services to the general public." *Id.* at 4408.

On June 9, 2025, DHS published the final rule, intending for the new regulations to go into effect on January 1, 2026. 90 Fed. Reg. 24217 (June 9, 2025) (codified at 6 C.F.R. pt. 139.5).

On November 5, 2025, DHS changed the effective date from January 1, 2026, to November 5, 2025. 90 Fed. Reg. 49247 (Nov. 5, 2025). DHS established "good cause" for this change in the rule's implementation, citing to then-recent "substantial rise in civil unrest near federal buildings, destruction of federal property, and violence perpetrated against federal officials." *Id.*; *see also* 5 U.S.C. § 553(b)(4)(B).

## C.    Factual Background

Plaintiffs Chloe Longworth and Anna Lardner have engaged in protest activities on the sidewalks around the federal building in Eugene, Oregon that houses ICE, IRS, the VA, and other federal agencies. ECF 1 (Complaint) at ¶ 15, ¶¶ 28–31. They have been cited for violating the newly-enacted federal noise ordinance, 6 C.F.R. § 139.35(c), which prohibits "[c]reating a loud or unusual noise, noxious odor, or other nuisance" "on Federal property or in areas outside Federal property, that affects, threatens, or endangers Federal property or persons on the Federal property."

On November 18, 2025, Plaintiff Longworth was among a group of protestors demonstrating outside of the Eugene federal building. ECF 1 at ¶ 7; ECF 30, Exh. A. According to an employee inside the building, the protestors were using a megaphone to amplify their voices and using vulgarities like "FUCKING NAZIS", "RAPISTS", and "PEDOPHILES." ECF 30, Exh. A. Because of the language being used and the volume to which it was amplified, the employee did not feel safe going outside of the building to perform his work duties. *Id.*

A Federal Protective Services (FPS) officer arrested Plaintiff Longworth and issued a citation for violating 6 C.F.R. § 139.35's noise ordinance. *Id.* at 5. At the time of her arrest, Plaintiff Longworth was carrying two megaphones. ECF 30, Exh. B.

On November 25, 2025, Plaintiff Lardner was at the Eugene federal building engaged in protest activity using a megaphone. ECF 1 at ¶ 30. At about 12:30 p.m., an IRS employee working inside of the building complained that the noise from the demonstration was interfering with the agency's routine business operations. ECF 30, Exh. C. FPS officers issued warnings about the noise, but after those verbal warnings the noise intensified. *Id.* At about 1:45 p.m., Eugene Police officers arrived on scene in response to noise complaints made by employees and others in the immediate area. *Id.* at 5. Close to 3 p.m., other IRS employees complained to FPS about the noise, saying that it was interfering with their ability to interview customers, a critical part of their tax review duties. *Id.* at 5–6. Although warnings were issued to the protestors, including Plaintiff Lardner, no arrests were made or citations issued. *Id.*; ECF 1 at 30.

An FPS officer noted that Plaintiff Lardner returned to the building the following week to participate in a regularly scheduled weekly protest. She engaged in protest activity for about four hours that day and left without incident. ECF 30, Exh. C.

**LEGAL STANDARD**

"To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "In evaluating a Rule 12(b)(6) motion, the court accepts the complaint's well-pleaded factual allegations as true and draws all reasonable inferences in the light most favorable to the plaintiff." *Adams v. U.S. Forest Serv.*, 671 F.3d 1138, 1142-43 (9th Cir. 2012). "However, the trial court does not have to accept as true conclusory allegations in a complaint or legal claims asserted in the form of factual allegations." *In re Tracht Gut, LLC*, 836 F.3d 1146, 1150 (9th Cir. 2016).

**ARGUMENT**

Plaintiffs raise three causes of action in their complaint: (1) the regulation violated the Administrative Procedures Act because it is vague and overbroad, allowing the government to punish individuals for protected First Amendment conduct, and it is an unreasonable time, place, and manner restriction; (2) the regulation violates the First Amendment directly because it is a content-based speech restriction and its enforcement has been done in retaliation for Plaintiffs' protected speech; and (3) the alleged violations authorize the Court to grant declaratory relief. Because all three causes of action find their foundation in the alleged First Amendment violations, the Plaintiffs' failure to state an adequate First Amendment claim requires dismissal of the entire complaint.

**I.      CLASS ACTION**

Plaintiffs' making references to bringing their complaints on behalf of themselves and "others similarly situated." *See* ECF No. 1 at ¶ 3. They do not allege sufficient facts to meet the requirements of a class action. Fed. R. Civ. P. 23. This Court's local rules require that a class

action be identified and properly pleaded. LR 23-1, 23-2. Because those rules have not been met, this matter should not be treated as a class action.

## II.    FIRST AMENDMENT, FIFTH AMENDMENT, AND APA CLAIMS

Plaintiffs' vagueness and overbreadth challenges within their first cause of action (APA), can sound in the First Amendment's free speech protections or in the Fifth Amendment's due process protections. Under either lens, this regulation does not suffer those flaws. The Court should dismiss Plaintiffs' First Amendment, Fifth Amendment, and APA claims on the merits—however they are conceptualized.

### A.    The Protection of Federal Property Regulation Is Not Unconstitutionally Vague

The Fifth Amendment provides that "[n]o person shall . . . be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. The Supreme Court has held that "the Government violates this guarantee by taking away someone's life, liberty, or property under a criminal law so vague that it fails to give ordinary people fair notice of the conduct it punishes, or so standardless that it invites arbitrary enforcement." *Johnson v. United States*, 576 U.S. 591, 595 (2015). Vague laws that reach speech implicate three main concerns: "(1) individuals should not be punished for behavior they could not have known was illegal, (2) vague laws allow arbitrary and discriminatory enforcement, and (3) vague laws may have a chilling effect on free speech." *O'Brien v. Welty*, 818 F.3d 920, 930 (9th Cir. 2016). "[P]erfect clarity is not required even when a law regulates protected speech." *Cal. Teachers Ass'n v. State Bd. of Educ.*, 271 F.3d 1141, 1150 (9th Cir. 2001). As relevant here, "[t]he degree of vagueness that the Constitution tolerates . . . depends in part on the nature of the enactment" and, for example, may be less stringent in cases of regulations. *Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.*, 455 U.S. 489, 498 (1982).

Here, Plaintiffs allege that the Protecting Federal Property regulation is unconstitutionally vague because it does not define "loud" or "unusual" noise. ECF No. 8 at 12. But even taking these terms in isolation, Plaintiffs' argument is foreclosed by Supreme Court precedent. In *Grayned v. City of Rockford*, the Supreme Court rejected a vagueness challenge to an antinoise ordinance prohibiting the "making of any noise or diversion" near school grounds. 408 U.S. 104, 107-08 (1972) (quoting ordinance). "Noise" and "diversion" were not defined. *See id.* at 110-11. Rather than finding them condemnably vague, the Court found them "marked by flexibility and reasonable breadth." *Id.* (quoting *Esteban v. Central Missouri State College*, 415 F.2d 1077, 1088 (8th Cir. 1969)). Because the rule specified its goal—preventing noise "which disturbs the peace or good order of" school sessions or classes—the "prohibited disturbances are easily measured by their impact on the normal activities of the school." *Id.* at 112. As such, the ordinance clearly "delineates its reach in words of common understanding." *Id.*

The same is true here. This regulation prohibits making noise that is loud or unusual enough that it "affects, threatens, or endangers Federal property or persons on the Federal property." 6 C.F.R. § 139.35. Speaking into a megaphone on the sidewalk outside of an operating Federal building during work hours is the type of activity that a person of ordinary intelligence would understand is likely to affect the persons working inside. Although sound amplifiers are "indispensable instruments of effective public speech," they "can be controlled by narrowly drawn statutes." *Saia v. New York*, 334 U.S. 558, 562 (1948).

Thus, in *Kovacs v. Cooper*, the Supreme Court upheld a city ordinance prohibiting the use of a "loud speaker or sound amplifier" that emits "loud and raucous noises," even within public fora. 336 U.S. 77, 78 (1949). The plaintiff alleged that this ordinance was so vague as to violate due process, and Court squarely acknowledged that the regulation "affect[ed] liberty of speech."

*Id.* at 79, Nonetheless, the Court treated the claim as borderline frivolous. *See id.* ("The contention that the section is so vague, obscure and indefinite as to be unenforceable merits only a passing reference.").  It explained that it would be "an extravagant extension of due process to say that" the government "cannot forbid talking on the streets through a loud speaker in a loud and raucous tone," *id.* at 87, not least because the terms "loud" and "raucous" "have through daily use acquired a content that conveys to any interested person a sufficiently accurate concept of what is forbidden." *Id.* at 79.  The same logic applies to DHS's regulation here.[1]

The Ninth Circuit has already applied this reasoning to antinoise regulations for other agencies. The Department of Veteran Affairs prohibits "[c]onduct on propery which creates loud or unusual noise … which otherwise impedes or disrupts the performance of official duties by Government employees." 38 C.F.R. § 1.218(a)(5).  It also prohibits "[d]isorderly conduct which creates loud, boisterous, and unusual noise, or which obstructs the normal use of entrances, exits, foyers, offices, corridors, elevators, and stairways or which tends to impede or prevent the normal operation of a service or operation of the facility." 38 C.F.R. § 1.218(b)(11). In *United States v. Agront*, the Ninth Circuit held that these regulations were not unconstitutionally vague as to a defendant who "yell[ed] … in the parking lot loudly enough to be heard in the hospital lobby 25 yards away," prompting staff to "le[a]ve" their work "to monitor the situation in the parking lot," and "continued to yell loudly" as he was being arrested. 773 F.3d 192, 194 (9th Cir. 2014). The court interpreted the applicable regulations as "includ[ing] a requirement that the 'disorderly conduct which creates loud, boisterous, and unusual noise' also be conduct that would tend to

---

[1] In addition to the megaphone usages, Plaintiff Longworth cites to an incident in which she was yelling and an officer said, "You need to stop yelling, Chloe—I don't want to have to come up there and arrest you again." Longworth Decl. ¶ 9. She was "with a small crowd of people, and [she] was the only one who was told to stop yelling." *Id.*  No citation issued after that warning.

disturb the normal operation of a VA facility." *Id.* at 196 (quoting 38 C.F.R. § 1.218(b)(11)). The court then concluded that "the regulation, so interpreted, is not unconstitutionally vague as applied to [defendant's] conduct." *Id.*

In reaching this conclusion, the court applied the reasoning in *Grayned* to the context of VA facilities. *See id.* at 196-98. The opinion emphasized that the regulation was "designed, as a whole, to maintain a calm environment at VA facilities" and served "[t]he government's interest in caring for veteran patients and not triggering adverse psychological reactions." *Id.* at 197 (quoting *United States v. Szabo*, 760 F.3d 997, 1003 (9th Cir. 2014)). "Most importantly," the court emphasized that *Grayned* held that "'[a]lthough the prohibited quantum of disturbance is not specified in the ordinance,' its purpose of protecting schools made it apparent 'that the measure is whether normal school activity has been or is about to be disrupted." *Id.* (quoting *Grayned*, 408 U.S. at 112). "So too here," the "regulation does not explicitly define a necessary quantum of 'loud, boisterous, and unusual noise'" but this can be "found by looking to the context in which the regulation applies." *Id.* In this case, "the quantum of … noise that is required to violate the regulation is conduct sufficiently 'loud, boisterous, and unusual' that it would tend to disturb the normal operation of a VA facility." *Id.* "Because th[is] controlling standard of conduct is reasonably clear and [the defendant] clearly violated that standard," the court held that the "regulation [wa]s not unconstitutionally vague." *Id.* at 199.

The Second Circuit came to the same conclusion when interpreting GSA's predecessor regulation that was limited to conduct that occurred on GSA property. Recall that regulation prohibited creating a "loud or unusual noise or a nuisance" on Federal property. 41 C.F.R. § 102-74.390(a). The Second Circuit rejected the argument that this was unconstitutionally vague. *United States v. Wasylyshyn*, 979 F.3d 165, 176 (2d Cir. 2020). It explained that "enforcement of

the Noise Regulation is restricted to a narrow and special environment" and "[r]easonable people can predict with a high degree of accuracy whether their conduct would create a 'loud or unusual noise or a nuisance.'" *Id.* As a result, it was not unconstitutionally vague. *Id.* Nor did the regulation present any risk of "arbitrary and discriminatory enforcement," because the plaintiff's conduct in that case—"shouting" at officers in the lobby of a Federal courthouse event after being "directed . . . to calm down"—fell "within the core of the Noise Regulation's prohibition." *Id.* It was therefore constitutional.

Here, DHS's regulation also prohibits "[c]reating a loud or unusual noise." 6 C.F.R. § 139.35(c). Applying the logic of *Agront*, this prohibition should be read together with the rest of the regulation as limited to conduct "on Federal property or in areas outside Federal property, that affects, threatens, or endangers Federal property or persons on the Federal property." *Id.* Just as context made clear that the ordinance in *Grayned* was aimed at protecting the continued operations of schools, and the regulation in *Agront* in protecting continued operations at VA facilities, so here the context of the regulation clarifies its purpose is to promote the continued operations of government work on Federal buildings. Even if no quantum of noise is specified, it may be interpreted as prohibiting such "loud or unusual noise" as "would tend to disturb the normal operation of the" facility. *Agront*, 773 F.3d at 199. In this case, the attached incident reports indicate that was the standard applied here: in both cases, individuals working inside the building reported being unable to work or feeling unsafe to continue working. ECF 30, Exh. A, C. "Because th[is] controlling standard of conduct is reasonably clear and [the defendants] clearly violated that standard," *Agront*, 773 F.3d at 199, the regulation is not unconstitutionally vague.

But this is in fact a much easier case than *Grayned*, *Kovacs*, *Agront*, or *Wasylyshyn*. Here, the regulation does not simply use the terms "loud" and "unusual" in isolation. Rather, the conduct

at issue is defined by relation to a well-defined concept at common law and one also separately defined in the regulation. The regulation by its text prohibits "[c]reating a loud or unusual noise, noxious odor, *or other nuisance*." 6 C.F.R. § 139.35(c) (emphasis supplied). "The words immediately surrounding" this phrase "cabin the contextual meaning of that term." *Yates v. United States*, 574 U.S. 528, 543 (2015). Courts refer to this canon as "the principle of *noscitur a sociis*— a word is known by the company it keeps" and employ this to "avoid ascribing to one word a meaning so broad that it is inconsistent with its accompanying words." *Id.* (quoting *Gustafson v. Alloyd Co.*, 513 U.S. 561 575 (1995)). Here, the regulation refers to "loud or unusual noise" as a "nuisance." § 139.35(c). That phrase limits any potential breadth of the phrase.

The term "nuisance" is well-defined at common law and has even been codified by many State legislatures, including Oregon's. *See* Black's Law Dictionary, ed. 11 ("nuisance" is "A condition, activity or situation (such as a loud noise or foul odor) that interferes with the use or enjoyment of property"); *see also, e.g.*, Or. St. § 30,932 (defining "nuisance" as "includ[ing] but is not limited to actions or claims based on noise . . ."); *Asmann v. Masters*, 98 P.2d 419, 423 (Kan. 1940) ("singing through megaphone" constituted nuisance). As the Supreme Court has recognized, courts have "uph[e]l[d] statutes as sufficiently certain" where they have "employed words or phrases having a technical or other special meaning, well enough known to enable those within their reach to correctly apply them, or a well-settled common-law meaning, notwithstanding an element of degree in the definition as to which estimates might differ." *Connally v. Gen. Const. Co.*, 269 U.S. 385, 391 (1926). "When a term has a well-settled common law meaning, it will not violate due process." *Panther v. Hames*, 991 F.2d 576, 578 (9th Cir. 1993). Thus, as a matter of first principles, the regulation cannot be unconstitutionally vague because it is tied to the definition of "nuisance," which is well-defined at common law.

More particularly, this regulation explicitly defines "nuisance," consistent with the accepted legal meaning, as "a condition, activity, or situation, to include a loud noise or foul odor, that interferes with the use or enjoyment of federal property." 6 C.F.R. § 139.15. Thus, even if there were any doubt as to the contours of this common-law term, the regulation itself provides sufficient clarity to ensure the term is well-defined. Further, the definition itself limits the scope of the regulation to nuisances that "interfer[e] with the use of enjoyment of federal property," *id.*, which is still more definite.

Finally, the record before the Court indicates that this term has been applied in an objectively reasonable way consistent with its ordinary meaning. Significantly, both incident reports show that Plaintiffs were using megaphones, which by design is meant to emit a "loud" or "unusual noise." ECF 30, Exhs. A, C. Further, both incident reports show that Plaintiffs were only addressed after someone working inside the building complained that the noise was so loud and unusual that they could not carry out government business or felt unsafe. *Id.* This conduct certainly "falls within the core" of the regulation and is objectively "louder" and more "unusual" than the conduct at issue in *Wasylyshyn*, which was limited to yelling without the aid of an amplifying device. 979 F.3d at 176. Thus the regulation is not vague.

**B.    The Regulation Is a Valid Time, Place, and Manner Restriction Consistent With the First Amendment**

The First Amendment provides that "Congress shall make no law … abridging the freedom of speech." U.S. Const. amend. I. To the extent that individuals outside Federal buildings threaten violence against government employees or espouse "fighting words," *i.e.*, "those which by their very utterance inflict injury or tend to incite an immediate breach of the peace," such conduct is not protected by the First Amendment. *Chaplinsky v. State of New Hampshire*, 315 U.S. 568, 572 (1942). *Cf.* ECF 30, Exh. A (reporting that Federal employee "did not feel safe to go outside to

complete his janitorial duties for the building" and "asked for an escort"). To the extent that Plaintiffs are engaging in political speech, such verbalized protests outside of the federal building are protected under the First Amendment. *N.Y. Times Co. v. Sullivan*, 376 U.S. 254 (1964). There is also no dispute that the sidewalk around the federal building is a traditional public forum. *ACLU of Nev. v. City of Las Vegas*, 333 F.3d 1092, 1099 (9th Cir. 2003) ("The quintessential traditional public forums are sidewalks, streets, and parks."). The issue in dispute is whether the noise regulation is a proper content-neutral time, place, and manner restriction. It is.

The regulation, by its plain terms, is content-neutral. It regulates volume of speech, not content. Content-neutral restrictions "are subject to an intermediate level of scrutiny because in most cases they pose a less substantial risk of excising certain ideas or viewpoints from the public dialogue." *TikTok Inc. v. Garland*, 604 U.S. 56, 70 (2025) (quoting *Turner Broadcasting System, Inc. v. FCC*, 512 U.S. 622, 642 (1994)). Under that standard, the law is sustained "if it advances important government interests unrelated to the suppression of free speech and does not burden substantially more speech than necessary to further those interests." *Id.* (quoting *Turner Broadcasting System, Inc. v. FCC*, 520 U.S. 180, 189 (1997)).

Noise restrictions of this sort are commonly recognized as advancing an important government interest in protecting citizens from unwelcome noise to protect health, safety, and welfare. *See, e.g.*, *Kovacs*, 336 U.S. at 81 ("The avowed and obvious purpose of these ordinances is to prohibit or minimize such sounds on or near the streets since some citizens find the noise objectionable and to some degree an interference with the business or social activities in which they are engaged or the quiet that they would like to enjoy."); *Cuviello v. City of Vallejo*, 944 F.3d 816, 825 (9th Cir. 2019) ("there are good reasons for regulating sound-amplifying devices," including "these devices can produce noise that is unpleasant and, certainly, unrestrained use …

would be intolerable") (quotation omitted).  The government also has an interest in maintaining the "fair and orderly working" of the employees within Federal buildings.  *See Cox v. Louisiana*, 379 U.S. 559, 565 (1965) (permitting noise restriction in public forum around courthouse to reduced disruption to proceedings); *Szabo*, 760 F.3d at 1002 (recognizing government's interest in "prohibiting conduct that diverts attention and resources" of Federal employees).  Other courts have therefore upheld regulations prohibiting "loud" or "unusual" noises in Federal buildings.  *See, e.g.*, *Wasylyshyn*, 979 F.3d at 175 (upholding conviction for violating regulation prohibiting creating a "loud or unusual noise or nuisance" in Federal courthouse);  *United States v. Thomas*, No. 13-3370M-001-PHX-LOA, 2013 WL 5783408, at *3 (D. Ariz. Oct. 28, 2013) (upholding regulation prohibiting "disorderly conduct" including "creat[ing] loud or unusual noise" within Veteran Affairs building).  The logic of these decisions applies equally here.

Significantly, the government's interest is the same regardless of whether noise emanates from within or without the building.  *See, e.g.*, *Madsen v. Women's Health Ctr., Inc.*, 512 U.S. 753, 772 (1994) (upholding injunction prohibiting "singing, chanting, whistling, shouting, yelling, use of bullhorns, auto horns, sound amplification equipment or other sounds … within earshot of" those in building during business hours); *Grayned*, 408 U.S. at 113 (upholding ordinance prohibiting noise outside that is "incompatible with normal school activity" and causes "disruption"); *Portland Feminist Women's Health Ctr. v. Advocs. for Life, Inc.*, 859 F.2d 681, 686 (9th Cir. 1988) (upholding injunction against "shouting, screaming, chanting, yelling, or producing noise by any other means, in a volume that substantially interferes with . . . services within" building); *March v. Mills*, 867 F.3d 46, 49 (1st Cir. 2017) (upholding statute prohibiting making noise that "can be heard within a building" with intent to "interfere with . . . services within the building").  If a Federal employee is disturbed from work because of a loud or unusual noise, it

makes no difference where the source is located. All else equal, loud noises made inside the building may reach more offices than a loud noise outside; but if the noise outside is sufficiently loud, it may well exceed in decibel levels any noise made within the meaning. *See, e.g.*, *Portland Feminist Women's Health Ctr.*, 859 F.2d at 686 (shouting outside building was "audible on the second floor"). Here, DHS found that loud and unusual noises originating from outside the building undermined the ability of Federal workers to conduct government business.

Against this backdrop, courts have regularly upheld similar antinoise regulations under the First Amendment. To add a few more examples: the Ninth Circuit upheld the VA's antinoise regulation in *Szabo*, where the defendant repeatedly yelled loud and rude phrases at federal employees, "[h]is yelling was so loud that it . . . was audible on other floors," and federal employees "feared for [their] safety." 760 F.3d at 1000. An Oregon appellate court upheld a state law prohibiting "unreasonable noise" where defendant used "bullhorn" on a "sidewalk." *State v. Pucket*, 422 P.3d 341, 344 (Or. Ct. App. 2018).

In *Grayned*, the Supreme Court explained that "[t]he crucial question is whether the manner of expression is basically incompatible with the normal activity of a particular place at a particular time." 408 U.S. at 116. Thus, "we think it clear that . . . expressive activity may be prohibited [on public sidewalk adjacent to school grounds] if it 'materially disrupts classwork or involves substantial disorder or invasion of the rights of others.'" *Id.* at 118 (quoting *Tinker v. Des Moines School Dist.*, 393 U.S. 503, 513 (1969)). In particular, "schools could hardly tolerate boisterous demonstrators who drown out classroom conversation, make studying impossible, block entrances, or incite children to leave the school house." *Id.* at 119. The Court therefore upheld the antinoise ordinance because it was appropriately "tailored to further [the government's]

compelling interest in having undisrupted school session conducive to the students' learning, and does not unnecessarily interfere with First Amendment rights." *Id.*

The same analysis applies here. DHS's regulation at issue here only limits loud and unusual noises to the extent that it constitutes a nuisance and interferes with the functions of Government inside Federal buildings. Defendants invoked this authority where Plaintiffs were using bullhorns or megaphones that interfered with the work of those in the building. It therefore falls squarely within the contours of *Grayned* and other precedents.

A law that is neutral on its face may, nonetheless, be constitutionally infirm if its enforcement discriminates based on viewpoint. *Rosebaum v. City & County of San Franscisco*, 484 F.3d 1142, 1158 (9th Cir. 2007). "Content discrimination occurs when the government choos[es] the subjects that may be discussed, while viewpoint discrimination occurs when the government prohibits speech by particular speakers, thereby suppressing a particular view about a subject." *Id.* (quote omitted). The Ninth Circuit generally treats such claims as "selective enforcement" claims under the Equal Protection Clause. *Hoye v. City of Oakland*, 653 F.3d 835, 855 (9th Cir. 2011). Regardless of how it is labeled, a plaintiff must show that the government's discriminatory enforcement "is the result of an intentional policy or practice." *Id.* Plaintiffs may prove the existence of an unwritten policy "by extrapolating from a series of enforcement actions . . . [which] demonstrate that the municipality is enforcing against them a rule that is distinct from the constitutionally valid enactment." *Id.* "It should be underscored, however, that '[a] regulation that serves purposes unrelated to the content of expression is deemed neutral, even if it has an incidental effect on some speakers or messages but not others.'" *Id.* (quoting *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989)).

Plaintiffs allege that they "are two of the more outspoken protesters at the ICE building, and appear to have been targeted by DHS because of the speech and because of their appearance of being leaders of the weekly protests." ECF No. 8 at 8. They admit, however, that they were using megaphones each time. ECF No. 1 at ¶¶ 28–30. And each time a Plaintiff was cited or warned, FPS received complaints from those working in the building that the volume of the protest was interfering with their normal job duties. ECF 30, Exh. A, Exh. C. On other days, protestors, including Plaintiffs, were permitted to proceed. By Plaintiffs' own allegations, they have been engaging in protest activity at this site weekly, or more often, "for months" with only the two reported incidents of citation or warning. ECF No. at ¶ 1, ¶¶ 28–30. Even assuming Plaintiffs' allegations to be true, they do not a claim. *Winter*, 555 U.S. at 24; *cf. Fla. Carpenters Reg'l Council v. City of Miami Beach*, No. 09-22329-CIV, 2009 WL 10699575, at *8 (S.D. Fla. Dec. 4, 2009) (rejecting arbitrary enforcement claim to noise ordinance). Nor do Plaintiffs allege that others promoting alternative viewpoints at similar volume are not being prosecuted.

## CONCLUSION

Because Plaintiffs' complaint fails to show that this regulation violates the First Amendment or is vague or overbroad, the complaint as a whole must be dismissed.

Respectfully submitted this 9th day of February, 2026

BRETT A. SHUMATE
Assistant Attorney General
Civil Division
*/s/ Michael Velchik*
MICHAEL VELCHIK
Senior Counsel to the Assistant
Attorney General
SCOTT E. BRADFORD
United States Attorney
District of Oregon
*/s/ Suzanne Miles*
SUZANNE MILES
Assistant United States Attorney
Attorneys for Defendants