Lauren Regan, OSB # 970878
Email: lregan@cldc.org
Marianne Dugan, OSB # 932563
Email: mdugan@cldc.org
CIVIL LIBERTIES DEFENSE CENTER
1711 Willamette Street Ste 301 # 359
Eugene, OR 97401
Telephone: 541-687-9180

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT
DISTRICT OF OREGON

| | |
|---|---|
| CHLOE LONGWORTH and ANNA LARDNER, | No. 6:25-cv-2268-AA |
| Plaintiffs, | |
| v. | PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION AND TEMPORARY RESTRAINING ORDER |
| DONALD J. TRUMP, President of the United States, in his official capacity; KRISTI NOEM, Secretary, U.S. Department of Homeland Security (DHS), in her official capacity; and U.S. DEPARTMENT OF HOMELAND SECURITY, | |
| Defendants. | |

Plaintiffs submit this reply in support of their motion for preliminary injunction and temporary restraining order.

I.   **RELEVANT FACTUAL ISSUES**

   A.   **Undisputed Facts**

Defendants admit that the enforcement of the regulation at issue is being enforced in a traditional public forum. Dkt 30 at 17.

Defendants admit that sound amplifiers are "indispensable instruments of effective public speech[,]" to be controlled only "by narrowly drawn statutes." Dkt 30 at 11-12 (citing *Saia v. New York*, 334 U.S. 558, 562 (1948)).

Defendants acknowledge that political speech in "verbalized protests" outside of federal

buildings are protected under the First Amendment. Dkt 30 at 17.

In addition, the following chronology appears to be undisputed:

- For months prior to November 2025, Plaintiffs and others regularly protested at the Eugene federal/ICE building, including using megaphones. Dkt 9-11.

- November 5, 2025 – The federal government announced the new regulations at 6 CFR Part 139 would go into effect immediately, instead of January 2026 as planned, due to a purported emergency need to protect federal property from "violent" protesters. https://www.federalregister.gov/documents/2025/06/09/2025-10223/protection-of-federal-property; https://www.dhs.gov/news/2025/11/05/dhs-announces-advanced-charging-authority-address-rioter-violence-federal-buildings.

- November 5, 2025, at around 8 a.m., federal agents in the Eugene federal building came outside to explicitly tell protesters there are new regulations that will be enforced to stop their activities. Ms. Lardner was specifically told the new regulations prohibited her from using a megaphone. Dkt 10 para 6; Dkt 11 para 4.

- November 18, 2025, federal agents arrested Plaintiff Longworth for "loud or unusual noise" pursuant to the new regulation at 6 C.F.R. 139.35(c). Dkt 9 at para 9; Dkt 9-1.

- That day, a janitor inside the building stated to a federal agent that the statements being made over the megaphone frighten him. Dkt 30-1 at 6.

- November 19 and 25, 2025, federal agents threaten to arrest Plaintiffs for megaphone use, but do not do so. Dkt 9 para 9-10; Dkt 10 para 6. Federal agents told Plaintiffs and other protesters that the mere use of megaphone was illegal – "The second WFA entered the facility to inquire about what constitutes creating a loud and unusual noise. Inspector VECHINI clarified that, under 6 CFR, the use of a megaphone or any similar device could be considered prohibited conduct." Dkt 30-3 at 5.

- That day, an IRS employee inside the building complains that the noise would be picked up in the recording she is making of a taxpayer's statement. Dkt 30-3 at 7.

- That day, Eugene Police officers came to the outside of the building, having been called by federal employees; but explicitly stated they were not advising or warning that a crime had been committed. Dkt 9 para 11; Dkt 10 para 7.

According to the evidence submitted by the Defendants, on November 18, 2025, when Plaintiff Longworth was among a group of protestors demonstrating outside of the Eugene Federal Building, a janitorial employee inside the building asked an Inspector to escort him to perform his duties due to the "overall loudness from the microphone" and that "he did not want to be called names." Dkt 30-1 at 6. But the details of his statement make clear that the source of his fear was not

the loudness of the protest but by the content of the protesters' speech -- "I had an overall feeling of being really scared of interacting with the protestors, not wanting to be attacked *verbally, cursed at or called names*." *Id.* It is not particularly surprising that he was concerned about the speech directed at him. He was going into the parking area/well that is open to public view – and now, public scorn. But that concern does not trump the First Amendment.

      **B.**        **Relevant Disputed Facts**

Defendants assert that Plaintiff Longworth was not arrested until a complaint was made. Prior to Ms. Longworth's arrest on November 18, Plaintiffs were never told that there had been a complaint that their megaphone use was disrupting the normal use of the building. 2nd Decl of Longworth para 3. As discussed *supra*, the nature of the November 18 complaint was about the *content* of the speech, not volume on its own. And when Eugene police arrived one week later, they did not warn the Plaintiffs they were violating any laws; to the contrary, as noted above they said they were simply making sure the Plaintiffs knew their speech was affecting people in the building. Lardner Dkt 10 para 7; *see also* Longworth Decl Dkt 9 para 11.

Defendants assert, or at least imply, that the noise they were responding to has been loud enough to disrupt the normal operations of the facility. First, as noted above and discussed in detail *infra*, the only evidence of an effect from the megaphone use on November 18, 2025, was that a janitor was "afraid" because of the words being used, rather than the volume of the noise on its own. Second, it is questionable that the noise is actually loud enough *inside* the building to disrupt operations. 2nd Decl. of Longworth para. 4; 2nd Decl. of Regan.[1] At any rate, these issues of fact are not relevant to the question of whether the regulation is *facially* valid under the First Amendment, as addressed in the Motion and *infra*.

---

[1] Although for the facial challenge, such factual details are not relevant, for an as-applied challenge, a site visit may become appropriate to determine the actual noise levels inside the facility.

Page 3 –   PLTFS' REPLY IN SUPPORT OF MO FOR PRELIM. INJUNCTION AND TRO

After acknowledging that the new regulations extend the scope of the pre-existing regulations to areas off of federal property (Dkt 30 at 2), Defendants falsely assert that the new regulations do not really do anything new, because the authorizing *statute* allows for enforcement off-site. First, by Defendants' own admission, the prior *regulations* – which are what are used to implement the statute – were limited to conduct on federal property. Second, as noted above, on November 5 at 8 am, federal agents took time to come outside to proclaim to the protesters – and the megaphone users in particular - that they now had new regulations they would be able to enforce. This is not surprising, since the "emergency" finalization of the regulations was accompanied by grandiose statements of the severe need for additional regulation and restriction of protest outside of federal buildings. https://www.dhs.gov/news/2025/11/05/dhs-announces-advanced-charging-authority-address-rioter-violence-federal-buildings; https://www.federalregister.gov/documents/2025/06/09/2025-10223/protection-of-federal-property.[2] And the arrest of Plaintiff Longworth, and threatened arrest of both Plaintiffs, occurred only after the new regulations went into effect.[3]

Furthermore, although the pre-existing, enabling statute allows for regulation on non-federal property, such enforcement is limited to activities "outside the property to the extent necessary to *protect* the property and persons on the property." 40 U.S.C. 1315(b)(1) (emphasis added). In contrast, the new regulation criminalizes behavior that "*affects*, threatens, or endangers Federal property or persons on the Federal property." 6 C.F.R. 139.35 (emph. added). This renders the regulatory scheme unconstitutionally vague, overbroad, and a tool for random censorship and enforcement at the whim of the federal agents.

A janitor's statement that he is "afraid" of the words being used is sufficient to trigger the

---

[2] Defendants' brief continues the parade of horribles, all of which are entirely irrelevant to the megaphone and the "loud or unusual noise" regulation at issue in this case. Dkt 30 at 5-6.

[3] Defendants appear to fault Plaintiffs for not challenging the prior regulations. Dkt 30 at 5. First, the statute of limitations for such a challenge has long past. Second, it is irrelevant, because it is the new regulations that are being enforced against Plaintiffs.

Page 4 –   PLTFS' REPLY IN SUPPORT OF MO FOR PRELIM. INJUNCTION AND TRO

"affects" language, resulting in Plaintiff Longworth being unconstitutionally seized, detained, and cited under the "loud or unusual noise" provision; and both Plaintiffs being threatened with such enforcement.

## II. PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS

### A. Plaintiffs Have Properly Presented a Claim under the APA

Defendants assert (at page 27) that Plaintiffs did not proceed with their APA claim in this injunction motion. That is incorrect. Defendants perhaps misapprehend the fact that the APA has several separate types of claims available. The APA requires this Court to hold unlawful and set aside any agency action, finding, or conclusion that is, in relevant part:

(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

(B) contrary to constitutional right, power, privilege, or immunity;

(C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right.

5 U.S.C. § 706(2). The complaint in this case invokes all three of these provisions. Dkt 1 para. 39-40.

In their injunction motion (at 9, 10-14), Plaintiffs explicitly argued that the regulation at issue is unconstitutional, and therefore must be rejected pursuant to 5 U.S.C. 706(2)(B). In *Webster v. Doe*, 486 U.S. 592, 602-04, 108 S. Ct. 2047 (1988), the Supreme Court held that a plaintiff may raise under the APA a constitutional challenge to agency action even where the plaintiff lacks an avenue under the APA to argue that the same agency action is invalid for statutory or procedural reasons.

### B. The Court Should Not Defer to the Agency's Interpretation of the Law

Under the APA, it "remains the responsibility of the court to decide whether the law means what the agency says." *Loper Bright Enterprises v. Raimondo*, 144 S. Ct. 2244, 2261 (2024) (citing *Perez v. Mortgage Bankers Assn.*, 575 U.S. 92, 109, (2015) (Scalia, J., concurring in judgment).

### C. The Addition of the Word "Affects" in the New Regulation Renders It Unconstitutional

The new regulation, by its plain language, for the first time criminalizes speech that merely "affects" the federal property or persons on the property. 6 C.F.R. 139.35(c).

"'[I]n the construction of administrative regulations . . . it is presumed that every phrase serves a legitimate purpose and, therefore, constructions which render regulatory provisions superfluous are to be avoided.'" *Rainsong Co. v. Fed. Energy Regulatory Comm'n*, 151 F.3d 1231, 1234 (9th Cir. 1998) (quoting *Hart v. McLucas*, 535 F.2d 516, 519 (9th Cir. 1976)). Therefore, in determining whether the new statute is unconstitutional, the Court must consider the addition of the word "affects," which is not found in the authorizing statute. In their brief, Defendants chose to gloss over that important change, but it is fatal wording that renders the regulation unconstitutionally vague and overbroad.

The record shows that enforcement was triggered by Plaintiffs' message and alleged fear of verbal criticism, not by content-neutral concerns over sound level. The janitor's reluctance to perform his duties stemmed from being called names and "cussed" at, which, as discussed in detail herein, is fully protected by the First Amendment. The fact that the janitor's fear of the "cuss words" and "insults" was used as the reason to arrest Plaintiff Longworth makes clear that the new regulation reaches protected political expression. This was not a situation highlighted by the Defendants in their brief, where the noise itself significantly interferes with the operations within the building.

If the use of profanity or harsh criticism is sufficient to justify criminal penalties because it makes a listener uncomfortable, the regulation is neither viewpoint neutral nor narrowly tailored. It is well-established that the government cannot silence particular speech or a particular speaker "due to an anticipated disorderly or violent reaction of the audience." *Meinecke v. City of Seattle*, 99 F.4th 514, 522 (9th Cir. 2024) (evangelist arrested when he refused to move as ordered by officers when

others abused and physically assaulted him; court reverses denial of preliminary injunction, finding content-based heckler's veto). Specifically, yelling profanities or other unpleasant speech towards public officials is protected speech, no matter how disruptive those officials may find it. *See Duran v. City of Douglas*, 904 F.2d 1372, 1377 (9th Cir. 1990) (holding that "making obscene gestures" and "yelling profanities" at police officers while "boorish, crass and, initially at least, unjustified," is "not illegal"); *Johnson v. Bay Area Rapid Transit Dist.,* 724 F.3d 1159, 1174 (9th Cir. 2013) (stating that "[e]ven though the police may dislike being the object of abusive language," they are not permitted "to use the awesome power which they possess to punish individuals for conduct that is not only lawful, but which is protected by the First Amendment"); *Fordyce v. City of Seattle*, 55 F.3d 436, 439 (9th Cir. 1995) (holding that officers could not "prevent or dissuade" the plaintiff "from exercising his First Amendment right to film matters of public interest").

It is unconstitutional to arrest, detain, and cite protesters for speech because their words (as amplified to enter the building) "affect" the staff within a federal building by upsetting them. This is precisely the overbreadth and discretionary enforcement the First Amendment forbids.

### D. The Cases Cited by Defendant that Did Not Involve a Public Forum Are Not Relevant

Several of the cases Defendants rely on did not involve public fora. Where protected speech is at issue, the degree to which the government may regulate such speech depends on the nature of the forum. *United States v. Szabo*, 760 F.3d 997, 1002 (9th Cir. 2014) (citing *Preminger v. Principi*, 422 F.3d 815, 823 (9th Cir. 2005).

Defendants cite *United States v. Wasylyshyn*, 979 F.3d 165, 176 (2d Cir. 2020). That case involved shouting at officers *in the lobby of a Federal courthouse* event after being "directed . . . to calm down." *United States v. Thomas*, No. 13-3370M-001-PHX-LOA, 2013 WL 5783408, at *3 (D. Ariz. Oct. 28, 2013) (emphasis added). This involved a regulation prohibiting "disorderly conduct" including "creat[ing] loud or unusual noise" *within* the Veteran Affairs building. Therefore, it is not

Page 7 –   PLTFS' REPLY IN SUPPORT OF MO FOR PRELIM. INJUNCTION AND TRO

relevant to the situation at hand--to what extent it is constitutional to regulate speech *outside* the building, on a traditional public forum.

In *Szabo*, the events took place within a VA lobby.

> The conduct for which Szabo was convicted does not constitute protected speech, because his conduct involved a "true threat" of violence. *Planned Parenthood*, 290 F.3d at 1072 (citing *Watts*, 394 U.S. at 707). Szabo threatened to "kick [the] pussy ass" of the receptionist, his doctor, and a VA security guard. While making this threat, he was yelling at the top of his lungs, "flailing his arms, [] leaning . . . over the counter[,] yelling in the face of . . . the receptionist[] . . . . slamm[ing] [a stack of papers] to the counter, and . . . slamming his hands." Szabo's actions put VA employees and other patients in fear for their safety, and the First Amendment does not protect such conduct.

*United States v. Szabo*, 760 F.3d 997, 1002-03 (9th Cir. 2014).

In *Grayned v. City of Rockford*, 408 U.S. 104, 107-08 (1972), about 200 students, family members, and friends gathered next to a school grounds. The plaintiff, whose siblings were attending the school, was part of this group. The demonstrators marched around on a sidewalk about 100 feet from the school building, which was set back from the street. This situation led the Court to invoke the unique school-related speech rules articulated by the Supreme Court in *Tinker* v. *Des Moines School District*, 393 U.S. 503, 513 (1969). The court noted:

> Just as *Tinker* made clear that school property may not be declared off limits for expressive activity by students, we think it clear that the public sidewalk adjacent to school grounds may not be declared off limits for expressive activity by members of the public. But in each case, expressive activity may be prohibited if it "materially disrupts classwork or involves substantial disorder or invasion of the rights of others."

The extremely narrow *Tinker* test for speech that impacts schools is not relevant here.

### E.    The Other Cases Defendants Rely on Are Clearly Distinguishable on Their Facts

In general, as even Defendants acknowledge in their brief at 14-18, the federal courts have limited enforcement of noise rules against amplified speech to situations in which the speech clearly and significantly interferes with the normal operations of the government or other facility.

In *United States v. Agront*, 773 F.3d 192, 194 (9th Cir. 2014), the defendant had been yelling in a Veteran's Affairs parking lot, loudly enough to be heard in the lobby 25 yards away. He was

Page 8 –   PLTFS' REPLY IN SUPPORT OF MO FOR PRELIM. INJUNCTION AND TRO

charged with "engag[ing] in disorderly conduct which created a loud, boisterous, and unusual noise, while on property under the charge and control" of the VA, a Class B misdemeanor, in violation of 38 C.F.R. § 1.218(b)(11). The Ninth Circuit held that these regulations were not unconstitutionally vague, noting that the noise had prompted staff to "le[a]ve" their work "to monitor the situation in the parking lot[,]" as he "continued to yell loudly" while being arrested. *Id.* at 194. While the facts may seem, on their face, similar to the case at hand, there is an important distinction. The *Agront* Court held that, in order to be constitutional, the regulations had to be interpreted as "includ[ing] a requirement that the 'disorderly conduct which creates loud, boisterous, and unusual noise' also be conduct that would tend to disturb the normal operation of a VA facility." *Id*. at 196. No such narrowing is possible here, because, as discussed *infra*, the court is required to give meaning to all clauses of the regulation, which in this case includes the unconstitutional word "affect" – a word that impermissibly goes beyond that constitutionally required limitation.

      The *Agront* Court then concluded that "the regulation, *so interpreted*, is not unconstitutionally vague as applied to [defendant's] conduct." *Id*. Unlike the new regulations, which added the unconstitutionally vague and overbroad word "affects" to the regulatory scheme, the statute at issue in *Agront* -- 38 C.F.R. § 1.218(b)(11) -- prohibits "*[d]isorderly* conduct which creates loud, boisterous, and unusual noise, or which *obstructs* the normal use of entrances, exits, foyers, offices, corridors, elevators, and stairways or which tends to *impede* or *prevent* the normal operation of a service or operation of the facility." Similarly, in *Portland Feminist Women's Health Ctr. v. Advocs. for Life, Inc.*, the Court upheld an injunction against "shouting, screaming, chanting, yelling, or producing noise by any other means, in a volume that *substantially interferes with* . . . services within" a women's health center. 859 F.2d 681, 686 (9th Cir. 1988) (emph. added). *See also March v. Mills*, 867 F.3d 46, 49 (1st Cir. 2017) (upholding statute prohibiting making noise that "can be heard within a building" with intent to *"interfere with . . . services within the building"*) (emph.

added); *State v. Pucket*, 422 P.3d 341, 344 (Or. Ct. App. 2018) (ORS 166.025(1)(b) upheld as lawful content-neutral time place and manner restriction; statute requires "intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof").

Regardless of whether a law targets speech specifically, a law is unconstitutionally vague, under the Fifth Amendment (or Fourteenth Amendment, when addressing a state or local law), if it "fails to give ordinary people fair notice of the conduct it punishes, or so standardless that it invites arbitrary enforcement." *Johnson v. United States*, 576 U.S. 591, 595 (2015). To avoid being unconstitutionally vague a law must "give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly." *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972). *See also Musser v. Utah*, 333 U.S. 95, 97 (1948) ("Legislation may run afoul of the Due Process Clause because it fails to give adequate guidance to those who would be law-abiding, to advise defendants of the nature of the offense with which they are charged, or to guide courts in trying those who are accused.")

> The objectionable quality of vagueness and overbreadth does not depend upon absence of fair notice to a criminally accused or upon unchanneled delegation of legislative powers, but upon the danger of tolerating, in the area of First Amendment freedoms, the existence of a penal statute susceptible of sweeping and improper application.

*NAACP v. Button*, 371 U.S. 415, 432-33 (1963).

As Defendants correctly state, vague laws that reach speech implicate three main concerns: "(1) individuals should not be punished for behavior they could not have known was illegal[,] (2) vague laws allow arbitrary and discriminatory enforcement[,] and (3) vague laws may have a chilling effect on free speech." *O'Brien v. Welty*, 818 F.3d 920, 930 (9th Cir. 2016).

Here, Defendants point to *Grayned* to as a means to satisfy their vagueness test; however, in that case the ordinance at issue was more narrowly defined than 6 C.F.R. § 139.35. In *Grayned* the ordinance prohibited noise which "*disrupts* the peace or good order of" school classes, with the court noting that the "prohibited disturbances are easily measured by their *impact on the normal activities*

*of the school.*" *Grayned v. City of Rockford*, 408 U.S. 112 (1972). (emphasis added).

Both *Grayned* and *Agront* interpreted the laws at issue to prohibit only noise that objectively and seriously interfered with institutional functions. The new regulation at issue in this case goes far beyond that threshold of disruption and significant interference to regulate amplified speech that merely *affects* Federal property or persons on the federal property, while also extending the regulatory scope to areas outside of federal property. This vague "affects" standard provides no meaningful boundary, permitting officers to convert lawful expressive activity on traditional public sidewalks into a federal crime.

Unlike the narrowly cabined ordinances in *Grayned* and *Agront*, the new regulation lacks any objective limitation to "disruption" or "interference" with the usual operations of the federal building. It empowers federal agents to criminalize speech that merely "affects" federal property or employees, based on subjective discomfort or hostility to protest activity, or any other reaction that could demonstrate an "effect" on the listener. Particularly in this moment in history where over 70% of Americans believe ICE and the government have gone way too far in rounding up immigrants, and killing Americans, the result of this hastily contrived vague and overbroad regulation is precisely what due process forbids: unfettered discretion, arbitrary enforcement, and the silencing of constitutionally protected expression. *Johnson v. United States*, 576 U.S. 591, 595 (2015).

### III.    PLAINTIFFS HAVE DEMONSTRATED SUFFICIENT EVIDENCE OF IRREPARABLE HARM

The record confirms precisely the arbitrary and chilling discretion allowed by the new regulations, which the vagueness doctrine forbids. Plaintiff Longworth attests that DHS has used the new regulations to "harass, retaliate and detain" activists for "unusual noise," despite engaging in lawful assembly and speech on city-owned sidewalks. Dkt 9 ¶¶ 6-8. Protesters have moved across the street or ceased participation entirely out of fear of arrest. Dkt 9 ¶¶ 14–16; Dkt 10 ¶¶ 9–10.

Plaintiff Longworth herself was detained, arrested, placed in a federal detention cell, and

cited for "prohibited conduct -- unusual noise," while standing on a public sidewalk expressing political views. Dkt 9 ¶ 8. The following day, a federal officer directly warned her to stop "yelling" or face arrest again, despite no objective disruption of government functions. Dkt 9 ¶ 9.

Similarly, Plaintiff Lardner describes DHS officers approaching her specifically to announce that "new federal regulations had just gone into effect" on November 5, 2025, and that megaphone use was now illegal even on adjacent public sidewalks. Dkt 10 ¶ 5. When Lardner later used a megaphone from a city sidewalk, DHS again warned her for "unusual noise" under the new regulations, even while acknowledging she was not on federal property. Dkt 10 ¶ 6.

Defendants have presented no evidence that such threat of prosecution has dissipated; and, as Plaintiffs testify in their declarations, they will continue to protest outside the ICE/federal building. Dkt 9, 10.

## IV.    THE PUBLIC INTEREST SUPPORTS AN INJUNCTION

The same factors raised in Plaintiffs' Motion and in the Court's TRO order persist. Defendants' invocation of broken windows (at 29) is entirely irrelevant to this case. There is no argument or evidence connecting the use of megaphones or "noise" and the breaking of the windows.[4]

## V.    DEFENDANTS' REQUEST TO TAILOR THE REMEDY TO *THESE* PLAINTIFFS IS NOT LEGALLY APPROPRIATE

Defendants request that, if the Court issues an injunction, it narrow the remedy to the current Plaintiffs. Dkt 30 at 25. Defendants provide no legal authority for such a narrow injunction regarding a facially unconstitutional regulation.

In the context of an APA challenge, "'when a reviewing court determines that agency

---

[4] There is a factual dispute as to how the windows were broken, with video evidence that they were pushed out from inside by federal agents. https://www.kezi.com/news/local/video-raises-questions-about-dhs-role-in-eugene-riot-damage/article_99b58fc9-7a11-4206-8ad8-f991322972c5.html

Page 12 –   PLTFS' REPLY IN SUPPORT OF MO FOR PRELIM. INJUNCTION AND TRO

regulations are unlawful, the ordinary result is that the rules are vacated -- not that their application to the individual petitioners is proscribed.'" *Regents of the Univ. of California v. U.S. Dep't of Homeland Sec.*, 908 F.3d 476, 511 (9th Cir. 2018), *rev'd in part, vacated in part sub nom. Dep't of Homeland Sec. v. Regents of the Univ. of California*, 140 S. Ct. 1891 (2020) (quoting *Nat'l Mining Ass'n v. U.S. Army Corps of Eng'rs*, 145 F.3d 1399, 1409 (D.C. Cir. 1998)). Justice Blackmun, writing in dissent but apparently expressing the view of all nine Justices on this question, explained:

> The Administrative Procedure Act permits suit to be brought by any person "adversely affected or aggrieved by agency action." In some cases the "agency action" will consist of a rule of broad applicability; and if the plaintiff prevails, the result is that the rule is invalidated, not simply that the court forbids its application to a particular individual. Under these circumstances a single plaintiff, so long as he is injured by the rule, may obtain "programmatic" relief that affects the rights of parties not before the court. On the other hand, if a generally lawful policy is applied in an illegal manner on a particular occasion, one who is injured is not thereby entitled to challenge other applications of the rule.

*Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 913, 110 S. Ct. 3177 (1990) (Blackmun, J., dissenting).

A plaintiff-by-plaintiff approach to enjoining an unconstitutional regulation would eviscerate the protections provided by the First Amendment, which bars regulations that not only harm those bold enough to keep protesting and filing lawsuits, but also those who are likely to be chilled by unconstitutional laws. As the Ninth Circuit held in *Mendocino Environmental Center v. Mendocino County*, the proper First Amendment inquiry asks "whether an official's acts would chill or silence a person of *ordinary firmness* from future First Amendment activities." 192 F.3d 1283, 1300 (9th Cir. 1999) (emph. added).[5] Because "it would be unjust to allow a defendant to escape liability for a First Amendment violation merely because an unusually determined plaintiff persists in his protected activity," the plaintiff does not have to demonstrate that their speech was "actually inhibited or suppressed." *Id*. See also *Rhodes v. Robinson*, 408 F.3d 559, 568-69 (9th Cir. 2005) (same).

---

[5] Defendants similarly make an irrelevant argument that Plaintiffs have not pointed to comparators using amplified sound who were not arrested or cited. Dkt 30 at 2-3. That is entirely irrelevant to a facial challenge; and as for an as-applied challenge there is no legal requirement of seeking out comparators.

VI. **IF THE COURT ISSUES A PRELIMINARY INJUNCTION, IT SHOULD EXERCISE ITS DISCRETION TO WAIVE BOND OR REQUIRE ONLY A NOMINAL BOND**

As the Western District of Washington noted last year:

> Under Federal Rule of Civil Procedure 65(c), "[t]he court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." "Despite the seemingly mandatory language, Rule 65(c) invests the district court with discretion as to the amount of security required, if any." *Johnson v. Couturier*, 572 F.3d 1067, 1086 (9th Cir. 2009) (citation modified).
>
> Here, the Court waives the imposition of any bond on Plaintiff States. "In public-interest litigation where the court enjoins unlawful agency action, a nominal bond is appropriate, especially where, as here, the government-defendant fails to provide any evidence that an injunction would impose a substantial cost." *Washington v. U.S. Dep't of Transp.*, ––– F. Supp. 3d –––, –––, 2025 WL 1742893, at *31 (W.D. Wash. June 24, 2025) (citation modified). And in recent cases enjoining federal agency defendants, courts have waived the bond requirement altogether. *See, e.g., King County v. Turner*, 785 F. Supp. 3d 863, 893 (W.D. Wash. 2025); *Los Angeles Press Club v. Noem*, ––– F. Supp. 3d –––, ––– n.33, 2025 WL 2658327, at *24 n.33 (C.D. Cal. Sep. 10, 2025); *Washington*, ––– F.Supp.3d at –––, 2025 WL 1742893, at *31.

*Washington v. United States Dep't of Educ.*, No. C25-1228-KKE, 2025 WL 3004675, at *12 (W.D. Wash. Oct. 27, 2025).

The same factors are true here. Both the public interest and Plaintiffs' lack of financial interest in the outcome -- represented by a nonprofit law firm with no claim for damages -- warrant a waiver of the bond requirement. Furthermore, Defendants have shown no evidence of a likelihood of monetary to make a bond of any amount necessary or appropriate.

**CONCLUSION**

Based on this brief and the motion, declarations and exhibits filed in this case, Plaintiffs respectfully request that the Court issue a preliminary injunction in this case, on the same grounds and same provisions as the existing temporary restraining order.

DATED: February 11, 2026.

                                       */s/ Lauren Regan*
                                 Lauren Regan, OSB # 970878

Email: lregan@cldc.org
Marianne Dugan, OSB # 932563
Email: mdugan@cldc.org
CIVIL LIBERTIES DEFENSE CENTER
1711 Willamette Street Ste 301 # 359
Eugene, OR 97401
Telephone: 541-687-9180

Attorneys for Plaintiff